# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| NNN 400 CAPITOL CENTER 16, LLC, *et al.*, | Bankr. Case No. 16-12728 (JTD)<br>Adv. Proc. No. 18-50384 (JTD) |
| Debtors. | |
| | |
| RUBIN & RUBIN, P.A., | On Appeal from the United States Bankruptcy Court for the District of Delaware |
| Appellant, | |
| v. | Civil Action No. 21-816 (CFC) |
| DON A. BESKRONE, SOLELY AS CHAPTER 7 TRUSTEE OF NNN 400 CAPITOL CENTER 16, LLC, *et al*., | |
| Appellees. | |

---

**APPELLANT'S BRIEF IN SUPPORT OF APPEAL
FROM BANKRUPTCY COURT'S ORDER ON LENDER DEFENDANTS'
MOTION FOR A RULE TO SHOW CAUSE WHY RUBIN & RUBIN
SHOULD NOT BE ORDERED TO COMPLY IMMEDIATELY WITH TWO
COURT ORDERS IT HAS VIOLATED OR, IF IT DOES NOT SO
COMPLY, BE HELD IN CONTEMPT OF COURT**

---

KLEIN LLC
Julia B. Klein (DE 5198)
225 W 14th Street, Suite 100
Wilmington, Delaware 19801
(302) 438-0456

*Counsel for Rubin & Rubin, P.A.*

Date: August 6, 2021

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ I

TABLE OF AUTHORITIES ............................................................................. III

CORPORATE DISCLOSURE STATEMENT ....................................................... 1

BASIS OF APPELLATE JURISDICTION ........................................................... 1

STATEMENT OF ISSUES ON APPEAL ............................................................ 1

STANDARD OF REVIEW .................................................................................. 3

CONCISE STATEMENT OF THE CASE ............................................................ 4

SUMMARY OF THE ARGUMENT ................................................................... 17

ARGUMENT ..................................................................................................... 17

   I.  THE BANKRUPTCY COURT ERRED, AS A MATTER OF LAW, IN
EXPANDING THE SCOPE OF LIABILITY OF THE ORDERS VIA A
FOOTNOTE IN THE CONTEMPT ORDER ..................................................... 17

   A) THE DIVESTITURE RULE DIVESTS THE LOWER COURT OF JURISDICTION TO
ALTER ORDERS THAT ARE ON APPEAL ................................................................. 18

   B) BY THE OSC MOTION, THE LENDER DEFENDANTS ASKED THE COURT TO
AMEND THE ORDERS, BOTH ON APPEAL ............................................................. 21

C) NOTWITHSTANDING THAT IT LACKED JURISDICTION TO DO SO,
THE BANKRUPTCY COURT INSERTED THE FOOTNOTE IN THE
CONTEMPT ORDER, THEREBY IMPERMISSIBLY EXPANDING THE SCOPE
OF THE ORDERS BY PIERCING THE CORPORATE VEIL ............................ 22

   II.  THE BANKRUPTCY COURT ERRED, AS A MATTER OF LAW, IN
IMPOSING, BY CONTEMPT ORDER, SANCTIONS FOR NON-
COMPLIANCE WITH THE ORDERS ON ENTITIES AND INDIVIDUALS
OTHER THAN RUBIN & RUBIN, P.A. ........................................................ 29

III.  THE BANKRUPTCY COURT ERRED IN ENTERING THE CONTEMPT ORDER WITHOUT FIRST ISSUING AN ORDER TO SHOW CAUSE AND DEPRIVING APPELLANT OF ITS RIGHT TO PRESENT DEFENSES IN A CONTEMPT HEARING ..................................................................................... 31

CONCLUSION ................................................................................................... 36

# TABLE OF AUTHORITIES

## Cases

*California v. Davis* (*In re Venoco, LLC*), 2020 U.S. Dist. LEXIS 8349 (D. Del. Jan. 17, 2020) ........................................................... 20

*Carr v. New Century TRS Holdings, Inc.* (*In re New Century TRS Holdings, Inc.*), No. 07-10416 (KJC), 2012 Bankr. LEXIS 2611 (Bankr. D. Del. June 7, 2012)  19

*Catlin v. United States*, 324 U.S. 229 (1945) .......................................................... 1

*CellNet Data Sys., Inc.* (*In re CellNet Data Sys., Inc.*), 327 F.3d 242 (3d Cir. 2003) ........................................................................ 3, 4

*Emerald Capital Advisors v. Victory Park Capital Advisors, LLC* (*In re KII Liquidating, Inc.*), 607 B.R. 398 (D. Del. 2019) .................................................. 4

*Galope v. New Century Mortg. Corp.* (*In re New Century TRS Holdings, Inc.*), Nos. 07-10416 (KJC), 12-51000 (KJC), 2013 Bankr. LEXIS 4350 (Bankr. D. Del. Oct. 16, 2013) ........................................................... 19

*In re Cont'l Airlines*, 150 B.R. 334 (D. Del. 1993) ................................................ 3

*In re Washington Mutual, Inc.*, 461 B.R. 200 (Bankr. D. Del. 2011) ................... 19

*Venen v. Sweet*, 758 F.2d 117 (3d Cir. 1985) ....................................................... 20

*Whispering Pines Estates, Inc. v. Flash Island, Inc.* (*In re Whispering Pines Estates, Inc.*), 369 B.R. 752 (B.A.P. 1st Cir. 2007)........................................................ 19

## Rules

Fed. R. App. P. 26.1 ................................................................................................ 1

Fed. R. App. P. 28(a)(1) .......................................................................................... 1

Fed. R. Bankr. P. 8012............................................................................................ 1

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. Bankr. P. 8012 and Fed. R. App. P. 26.1 and 28(a)(1),

Rubin & Rubin, P.A. states that it is not a corporate party.

## BASIS OF APPELLATE JURISDICTION

The District Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a), which provides that district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees."

On May 26, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order on Lender Defendants' Motion for a Rule to Show Cause Why Rubin & Rubin Should Not Be Ordered to Comply Immediately with Two Court Orders It Has Violated or, If It Does Not So Comply, Be Held in Contempt of Court* (RR728) (the "Contempt Order")

The Contempt Order is final in that it disposes of all parties' claims. *See Catlin v. United States*, 324 U.S. 229, 233-34 (1945).

The Bankruptcy Court had jurisdiction over the bankruptcy case and adversary proceeding below pursuant to 28 U.S.C. §§ 151, 157, and 1334(b) and the February 29, 2012 *Amended Standing Order of the United States District Court for the District of Delaware* referring all proceedings arising under the Bankruptcy Code to the Bankruptcy Judges of that District.

## STATEMENT OF ISSUES ON APPEAL

1.       Whether the Bankruptcy Court erred in altering (a) the Memorandum Opinion and Order on the United States Trustee's Motion to Revoke or Terminate

Retention of Rubin and Rubin, P.A. (RR565) (the "<u>Revocation Order</u>") and (b) Order re: Motion for Clarification (RR586) (the "<u>Fee Shifting Order</u>") by its Order on Lender Defendants' Motion for a Rule to Show Cause Why Rubin & Rubin Should Not Be Ordered to Comply Immediately With Two Court Orders It Has Violated or, If It Does Not So Comply, Be Held in Contempt of Court (RR728) while both the Revocation Order and the Fee Shifting Order are on appeal to the United States District Court for the District of Delaware.

2.      Whether the Bankruptcy Court lacked jurisdiction to enter the Contempt Order pursuant to the Divestiture Rule.

3.      Whether the Bankruptcy Court erred in imposing sanctions for non-compliance with the Revocation Order and the Fee Shifting Order without first issuing an order to show cause why Rubin & Rubin, P.A. should not be sanctioned.

4.      Whether the Bankruptcy Court erred in entering an order on the Lender Defendants' Motion for A Rule to Show Cause Why Rubin & Rubin Should Not Be Ordered to Comply Immediately With Two Court Orders It Has Violated Or, If It Does Not So Comply, Be Held In Contempt Of Court  (RR590) (the "<u>OSC Motion</u>") that granted relief not sought by the Contempt Motion.

5.      Whether the Bankruptcy Court erred in imposing, by the Contempt Order, joint and several liability for the amounts ordered to be paid by Rubin & Rubin, P.A. in the Revocation Order and the Fee Shifting Order on "I. Mark Rubin,

P.A., Rubin Law Associates, P.A., Guy Bennett Rubin, P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name."

    a. When the Revocation Order and the Fee Shifting Order only ordered Rubin & Rubin, P.A. to pay those fees.

    b. When only Rubin & Rubin, P.A. had been retained as counsel by the debtors in the underlying bankruptcy cases.

    c. When only Rubin & Rubin, P.A. had received funds from the debtors in the underlying bankruptcy cases.

6.    Whether the Bankruptcy Court erred in imposing, by the Contempt Order, joint and several liability for a $1,000 per diem fine on "I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin, P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name."

## **STANDARD OF REVIEW**

The Bankruptcy Court's conclusions of law are subject to plenary review. *Schlumberger Res. Mgmt. Servs., Inc. v. CellNet Data Sys., Inc*. (*In re CellNet Data Sys., Inc*.), 327 F.3d 242, 244 (3d Cir. 2003); *also see In re Cont'l Airlines*, 150 B.R. 334, 336 (D. Del. 1993) ("Legal conclusions of the bankruptcy court are subject to

plenary review by the district court and are considered *de novo* on appeal."). Thus, this Court is not bound by the Bankruptcy Court's legal determinations.

Findings of fact will be reversed when they are found to be clearly erroneous. *Id.*; *see Emerald Capital Advisors v. Victory Park Capital Advisors, LLC* (*In re KII Liquidating, Inc.*), 607 B.R. 398, 404 (D. Del. 2019) (appellate court reviews "findings of fact for clear error"). Mixed questions of law and fact are reviewed under a "mixed standard, affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court's interpretation and application of those facts to legal precepts." *CellNet Data Sys.*, 327 F.3d at 244 (citation omitted).

An award of sanctions typically is reviewed for for abuse of discretion. Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000). A court's jurisdiction to award sanctions is subject to de novo review. *Haagensen v. Reed*, 666 F. App'x 140, 142 n.3 (3d Cir. 2016)

## CONCISE STATEMENT OF THE CASE

On December 9, 2016 (the "Petition Date"), certain of the Debtors in the underlying bankruptcy case filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). *See* Bankr. D.I. 1.

On December 20, 2016, the Debtors filed the motion to retain and employ the law firm Whiteford, Taylor & Preston LLP as their bankruptcy counsel pursuant to section 327(a) of the Bankruptcy Code [Bankr. D.I. 26]. They also filed the motion

4

to retain and employ Rubin & Rubin, P.A., as special counsel pursuant to section 327(e) of the Bankruptcy Code (RR001).

Rubin & Rubin, P.A. is a trade name registered with the Florida Division of Corporations pursuant to Florida's Fictitious Name Act, Fla. Stat § 856.09.[1]  *See* (RR033) (Response to OSC) at 2; (RR066-first page only).  Rubin & Rubin, P.A. is the d/b/a for the legal entity and Florida law firm I. Mark Rubin, P.A., of which Mark Rubin is the president and 100% owner.  (RR314, ¶ 1) ("I [I. Mark Rubin] am the sole owner and president of I. Mark Rubin, P.A., a law firm practicing under the fictitious name Rubin & Rubin, P.A.").  I. Mark Rubin is properly registered with the Florida Bar as an attorney practicing at Rubin & Rubin, P.A.   (RR059)

His brother, Guy Rubin, also is a Florida attorney.  He has his own firm, Rubin Law Associates, P.A., but in connection with the representation of the Debtors worked in an "of counsel" capacity to I. Mark Rubin, P.A./Rubin & Rubin, P.A.  *See* Declaration of Guy Rubin (RR215, ¶ 10) ("I am "of counsel" to Rubin & Rubin … I. Mark Rubin has supervised me, as well as all attorneys and staff, on our handling of these bankruptcy cases … All staff members contemporaneously make entries

---

[1]     The State of Florida's "Fictitious Name" statute provides that a person may engage in business under a fictitious name if the name is properly registered with the Florida Division of Corporations. The  statute further provides that a fictitious name can include the term "P.A." if the person or business for which the name is registered is organized as a professional corporation. Fla. Stat. § 865.09(3), (14).

into Rubin & Rubin's time and billing software"), (RR216, ¶ 11) ("my loyalties, and those of all staff members runs through Rubin & Rubin"). All billing and payments in connection with the Debtors' bankruptcy cases, including any compensation due to Guy Rubin, was handled solely through I. Mark Rubin, P.A./Rubin & Rubin, P.A. *Id*. ¶ 12(h) ("Compensation in these cases has been paid to Rubin & Rubin from the Debtor-in-Possession account pursuant to Court approved orders for the payment of interim fees.").

On March 1, 2017, the Bankruptcy Court authorized Appellant's retention as special counsel to the Debtors pursuant to 11 U.S.C. § 327(c) *nunc pro tunc* to the Petition Date. *See* RR029 (the "<u>Retention Order</u>"). The Retention Order provides:

> Upon consideration of the *Application for Authority to Employ Rubin and Rubin, P.A., Nunc Pro Tunc to the Petition Date, as Special Counsel for the Debtors and Debtors-in-Possession* (the "<u>Application</u>") …; it is, by the United States Bankruptcy Court for the District of Delaware, hereby **ORDERED THAT**:
>
> 1. The Application is **APPROVED**, as set forth herein.
> 2. Pursuant to section 327(e) of the Bankruptcy Code, the Debtors be and hereby are authorized to employ Rubin and Rubin as special <u>corporate and litigation</u> counsel

RR029-030, (bold and underlining in original).

On August 9, 2019, the Bankruptcy Court entered a Memorandum Order RR284 (the "<u>Mem. Op</u>.").  It stated:

6

[The Lender] Defendants … assert that because Rubin & Rubin is a fictitious entity made up of separate law firms, the payment of fees to Rubin & Rubin constitutes impermissible fee sharing. Section 504 of the Bankruptcy Code provides, in relevant part, that a professional receiving compensation from estate assets shall not share or agree to share that compensation with another person, unless that person is a member, partner, or regular associate of the professional's firm. 11 U.S.C. § 504(a)-(b). The Rubins rely on *Lemonedes* and *Worldwide Direct* to argue that Guy Rubin, as well as Messrs. Tessitore and Li, merely acted in an "of counsel" relationship and should be considered as employees of the firm for purposes of sharing compensation under section 504. The *Lemonedes* case involved an attorney who was retained by a law firm to work on a case-by-case basis, each instance effectuated by a separate agreement. *Lemonedes v. Balaber-Strauss* (*In re Coin Phones, Inc.*), 226 B.R. 131, 132 (S.D.N.Y. 1998). *Worldwide Direct* involved a law firm hiring temporary employees through a staffing agency, where those employees were held to be regular associates because the law firm directly supervised the attorneys and provided everything necessary to do the work. *In re Worldwide Direct Inc.*, 316 B.R. 637, 648 (Bankr. D. Del. 2004). Though informative, neither of these cases are directly on point.

Given the unusual nature of the facts in this case, the Court is tasked with making a determination on the relationship between the attorneys and entities under the Rubin & Rubin umbrella. After a review of the record, the Court has determined that the primary attorneys operating under the umbrella are Guy Rubin and I. Mark Rubin, and their respective individually owned firms, Rubin Law Associates, P.A. and I. Mark. Rubin, P.A. Mr. Li works as an associate at I. Mark Rubin, P.A., and Mr. Tessitore appears to have an of counsel relationship with Rubin Law Associates, P.A. While the firms operating under the Rubin & Rubin umbrella are two distinct legal entities, they share the same office space. Also, as a matter of

> longstanding practice, the two firms regularly represent themselves to the public as Rubin & Rubin, which is the name displayed outside of the office building. Furthermore, the record establishes that the fees shared on every case are based on the hours each put into the case, as opposed to a retainer or a referral fee. The Court concludes that the two firms operating as Rubin & Rubin are for all intents and purposes a partnership, with fee sharing among its partners, I. Mark Rubin, P.A. and Rubin Law Associates, P.A. Thus, the Court finds no impermissible fee sharing arrangement.

RR289-290.

On August 23, 2019, Appellant filed *The Rubins' Limited Motion for Reconsideration of [the] August 9, 2019, Memorandum Order Relating to Defendants['] Entitlement to Attorney's Fees* (RR292) (the "<u>Motion to Reconsider</u>").  The request for reconsideration was limited to the Bankruptcy Court's shifting attorney's fees pursuant to its "inherent authority" without a finding that Appellant had acted in bad faith.

> This Court did impose sanctions in connection with incomplete disclosures by Rubin & Rubin, P.A. The Rubins accept responsibility for the incomplete disclosures, which have been corrected. The Rubins accept this Court's sanctions except for the sanction of payment of Defendants' attorneys' fees and costs in bringing The Motion, for the reasons articulated herein.

RR293.

> As the basis for all of the sanctions […], the Court recited its inherent authority to supervise the professionals appearing before it. […] However, relevant case law does not support the particular sanction of assessing fee-shifting

> attorneys' fees in favor of the defendants absent a specific finding of bad faith or other deliberate misconduct.
>
> The Memorandum Order makes no such findings. In fact, the Court makes the opposite finding:
>
> > [I]t is not lost on the Court that the Rubins are not bankruptcy practitioners — and thus not accustomed to the stringent disclosure requirements mandated by the Bankruptcy Rules—and likely had no intent to deceive the court when they failed to adequately disclose the attorneys and entities that practice under the umbrella of Rubin & Rubin.
> >
> > However, the *negligent* failure to disclose does not relieve the Rubins from the consequences of failing to make a fulsome and accurate disclosure.
>
> (Memorandum Order p. 6) (Emphasis added). Hence, clearly the Court found no intentional misconduct, and at worst, any incomplete disclosure was likely a mistake due to unfamiliarity with bankruptcy rules.

RR296-297

On September 6, 2019, the Lender Defendants opposed the Motion to Reconsider (RR317). The Lender Defendants argued that a finding of bad faith was not required for the Bankruptcy Court to exercise its inherent authority and that, alternatively, the Bankruptcy Court could sanction Appellant under section 105(a), for which no finding of bad faith was required. (RR328, RR330).

The Bankruptcy Court agreed with Appellant that "under its inherent power, it is unable to impose fee-shifting sanctions[,]"and that it was "clear error of law" for it to have done so. Memorandum Opinion RR341; filed 10/09/19] at RR343,

342.   But the Bankruptcy Court found it could shift fees under other authority, namely, Fed. R. Bankr. P. 9011 and 11 U.S.C. § 105(a).  RR343-345.  Holding that its previous finding that Appellant had acted negligently met the Rule 9011 and section 105(a) legal standard for doing so, the Bankruptcy Court again awarded Appellees their fees, albeit in a reduced amount.

On January 30, 2020, the Office of the United States Trustee (the "UST") filed the *Motion to Revoke or Terminate Retention of Rubin and Rubin, P.A. and Disallow Fees and Expenses of Rubin and Rubin, P.A. and Seth Denison* (RR349) (the "Motion to Disqualify").

On February 25, 2020, Appellant opposed the Motion to Disqualify (RR385).

The Bankruptcy Court conducted a hearing on the Motion to Disqualify via a Zoom Conference on July 29 and 30, 2020 (the "Disqualification Hearing").  At the Disqualification Hearing, the Bankruptcy court sequestered Guy Bennett Rubin, of Rubin Law Associates, P.A., on the basis that the party to the disqualification proceeding was Rubin & Rubin, P.A. (i.e., I. Mark Rubin, P.A.) that already was represented by I. Mark Rubin.  Guy Bennett Rubin, of Rubin Law Associates, P.A., the Bankruptcy Court determined, was not a party to the disqualification proceeding, and therefore had to be sequestered (under Federal Rule 615):

> MR. SIMON:  Thank you, Your Honor.  Your Honor, one housekeeping matter. Before the break, Your Honor ruled that Mr. Eidel is not permitted to remain on the call. We had also raised the prospect of Mr. Guy Rubin remaining

on the call because he is a party representative, a party. But it wasn't clear from the ruling, as I recall, that Mr. Rubin was also sequestered.

THE COURT: Yes, they're both sequestered. Rubin & Rubin is the respondents, and Mark Rubin is going to be testifying, so he's the representative.

RR471 at 100:15-101:3. Accordingly, Guy Rubin, individually, and his firm Rubin Law Associates, P.A., were excluded from hearing testimony and argument concerning the Motion to Disqualify.[2]

The Bankruptcy Court ruled on the Motion to Reconsider on September 4, 2020, ordering that:

Plaintiffs' Counsel, Rubin & Rubin, filed a Motion for Clarification of the Court's October 9, 2019 Memorandum Opinion …

***Rubin & Rubin*** shall, within 30 days from the entry of this order, pay the following fees to Defendants' counsel: (i) Counsel for Defendants Well Fargo Bank, N.A., LNR Partners, LLC, Berkadia Commercial Mortgage LLC, Little Rock-400 Capitol Trust, and Taconic Capital Advisors, LP $35,000; Counsel for Defendant Somera

---

[2]    At the time of the Disqualification Hearing, or at the time the Orders were appealed, there was no indication that the Bankruptcy Court would impose joint and several liability on all firms and individuals associated with the only firm retained by the Debtors, Rubin & Rubin, P.A.  Again, the Bankruptcy Court sequestered Guy Rubin and his firm, Rubin Law Associates, P.A., on the basis that they were not parties to the disqualification proceeding, only Rubin & Rubin, P.A., which it found to be already represented by I. Mark Rubin.

Road, Inc. $15,000; Local Counsel for Defendant Somera
Road, Inc. $5,000.[3]

RR586 (together with the Mem. Op., the "Fee Shifting Order") (*emphasis* added).

Also on September 4, 2020, the Bankruptcy Court entered the *Memorandum Opinion and Order on the United States Trustee's Motion to Revoke or Terminate Retention of Rubin and Rubin, P.A.* (RR565) (the "Revocation Order" and, together with the Fee Shifting Order, the "Orders").

Appellant timely appealed both Orders on September 18, 2020 [Bankr. D.I. 644]. Rubin Law Associates, P.A., separately appealed the Orders the same day [Bankr. D.I. 645].

On March 18, 2021, the Debtors cases converted from cases under chapter 11 of the Bankruptcy Code to cases under chapter 7 and Don A. Beskrone, Esquire, was appointed as chapter 7 trustee (the "Chapter 7 Trustee"). *See* RR587.

On April 28, 2021, Appellees Wells Fargo Bank, N.A., in its capacity as Trustee for the Registered Holders of Comm. 2006-C8 Commercial Mortgage Pass

---

[3]    The Fee Shifting Order is currently on appeal to the District Court. Somera Road, Inc. initially was part to that appeal but later sought, and was granted, leave to be excused from the appeal. *See* C.A. No. 20-1260 (CFC), D.I. 27 (stipulation filed 1/14/21; so ordered 1/15/21). It has thus abandoned its claim to a recovery under the Fee Shifting Order. Notwithstanding this status, the Bankruptcy Court ordered that the failure to pay Somera's fee shifting award be included in the Contempt Order.

Through Certificates, Berkadia Commercial Mortgage, LLC, LNR Partners, LLC, Little Rock-400 West Capitol Trust, and Taconic Capital Advisors, L.P. (collectively, the "Lender Defendants") filed the OSC Motion.  By the OSC Motion, the Lender Defendants asked the Court to enter an order:

> … upon Rubin & Rubin to show cause why … Rubin & Rubin should not be ordered to comply immediately with the Fee Shifting Order and the Disqualification and Disgorgement Order or, if it does not so comply, be held in contempt of court for its violation of two court orders; …

RR591. The OSC Motion did not seek a finding of contempt, but rather sought an order from the Bankruptcy Court directing Appellant to show cause why it should not be held in contempt.  The OSC Motion initiated what normally is a two-step contempt proceeding process, but, at the urging of the Lender Defendants, the Court bypassed the motion, and went straight to a finding of contempt.

The OSC Motion further sought for the Bankruptcy Court to alter the Revocation Order by way of a footnote in the proposed form of order to show cause. That footnote reads as follows:

> Rubin & Rubin, P.A. (referred to herein as "Rubin & Rubin") includes I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennet Rubin P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name.

RR601, n.2.  By that footnote, the Lender Defendants sought to expand the scope of liability under the Revocation Order from Rubin & Rubin, P.A. to I. Mark and Guy

13

Rubin individually and to any firm or individual associated with them, including, presumably Mr. Li and Mr. Tessitore, who were both mentioned as "of counsel" lawyers permitted by the court to work under the Rubin & Rubin "Umbrella" without violation any fee sharing provisions, as discussed by the Bankruptcy Court in the August 19, 2019 Memorandum Opinion. (RR284).

On May 12, 2021, Appellant filed its *Objection to Lender Defendants Motion for a Rule to Show Cause Why Rubin & Rubin Should not Be Ordered to Comply Immediately with Two Court Orders It Has Violated or, if It Does Not So Comply, Be Held in Contempt of Court* (RR632). In the objection, Appellant responded to the Lender Defendants' request for an order compelling Appellant to show cause and argued that, procedurally, it would be improper for the Bankruptcy Court to issue do so, *inter alia*, because the OSC Motion sought relief the Bankruptcy Court lacked jurisdiction to grant pursuant to the Divestiture Rule.

On May 18, 2021, the Lender Defendants filed their *Reply Brief in Further Support of Their Motion For A Rule To Show Cause* (RR699), again asserting that "Rubin & Rubin **should be ordered to show cause** why it should not be held in contempt …" RR706 (***emphasis*** added).

On May 25, 2021, a hearing was held to consider the OSC Motion (the "Hearing"). After Appellant's counsel presented argument on why it would be inappropriate to modify the Orders via the Footnote, the following exchange ensued:

14

MS. KLEIN: … But respectfully, to hold Mark Rubin and Guy Rubin individually liable [by insertion of the Footnote] when they're not named in the orders themselves, I mean, that would by analogy -- you know, Mr. Chronis is an attorney at Duane Morris and he's operating under the Duane Morris name.  So to say that Mark and Guy Rubin individually are liable would be to say, well, Duane Morris was ordered to disgorge funds, so therefore we're also going to impose individual liability on Mr. Chronis...

THE COURT: Who else is going to pay these amounts other than the two individuals? They're the sole partners in their individual law firms, or they are partners in their individual law firms, and they operate under Rubin & Rubin, and they represented themselves to this court as Rubin & Rubin. They were retained by the debtors as Rubin & Rubin, P.A. They were paid by the debtors as Rubin & Rubin, P.A. They reaped all the benefits. But now they want to say, wait, Your Honor, we don't understand why we should have to pay these fees. Who else is going to pay it? Rubin & Rubin is a fictitious name.

MS. KLEIN: I agree with that, but … you have fictitious names and fictitious entities, there is a second step that is required to impose individual liability on the people that stand behind those names and fictitious entities. …

RR716 at 14:10-15:23.

At the conclusion of the Hearing, the Bankruptcy Court declined to enter an order compelling Appellant to show cause why it should not be held in contempt and instead directed the parties to submit an order *finding* Rubin to be in contempt of Court. On May 26, 2021, the Bankruptcy Court entered the form of order submitted by the Lender Defendants (RR728) (the "Contempt Order").

The Contempt Order includes the footnote requested by the Lender Defendants that reads as follows:

> "Rubin & Rubin, P.A." includes: I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennet Rubin P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name.

RR729 ¶ 2 n.1 (the "Footnote").  The Contempt Order further provides for a *per diem* fine in the sum of $1,000 until the amounts in the Orders have been fully satisfied.  RR730 at ¶ 4.  That fine also was imposed jointly and severally on "I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennet Rubin P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name."

On June 3, 2021, Appellant timely appealed the Contempt Order (RR731).

On July 7, 2021, the Chapter 7 Trustee, relying on the Bankruptcy Court's "definition" of Rubin & Rubin, P.A. in the Contempt Order, filed the motion, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure, to take discovery of I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name in connection with the Orders (RR774) (the "2004 Motion").  The 2004 Motion seeks broad financial information from all individuals and entities included in the scope of the Footnote, including lawyers and their law

16

firms and spouses who were given no notice and have no legal representation in the proceedings.

## SUMMARY OF THE ARGUMENT

It was reversible error for the Bankruptcy Court to expand the scope of liability under the Orders from Rubin & Rubin, P.A. to "I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennet Rubin P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name."

It also was reversible error for the Bankruptcy Court to enter the Contempt Order without first issuing an order compelling Rubin & Rubin, P.A. to show cause why it should not be held in contempt and conducting an evidentiary contempt hearing.

## ARGUMENT

### I.   THE BANKRUPTCY COURT ERRED, AS A MATTER OF LAW, IN EXPANDING THE SCOPE OF LIABILITY OF THE ORDERS VIA A FOOTNOTE IN THE CONTEMPT ORDER

The Contempt Order must be reversed because (a) the Bankruptcy Court lacked jurisdiction pursuant the Divestiture Rule to alter and amend the Orders, both of which are on appeal and *sub judice* in this Court; and (b) it was improper for the Bankruptcy Court to expand the scope of liability from Appellant to Appellant and various other entities and individuals, both identified and unidentified, associated with Appellant, jointly and severally.

17

### A)   The Divestiture Rule Divests the Lower Court of Jurisdiction to Alter Orders that Are on Appeal

Courts have a continuing duty to assess their own jurisdiction and, where they find such jurisdiction lacking, must dismiss the action.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (noting a federal court has a "continuing obligation to assess its subject matter jurisdiction" and can dismiss an action *sua sponte* at any stage of the proceeding where it lacks such jurisdiction); *In re Solar Tr. of Am., Ltd. Liab. Co.*, No. 12-11136 (KG), 2015 Bankr. LEXIS 76, at *6 (Bankr. D. Del. Jan. 12, 2015) ("the Court has inherent power and a continuing obligation to determine its own jurisdiction") (internal citation and quotation omitted).  The Bankruptcy Court thus had the duty to assess its jurisdiction prior to considering the OSC Motion on the merits.

The general rule is that, even where an appeal of an order is pending, the trial court, here, the Bankruptcy Court, retains jurisdiction to enforce the order where no stay on the enforcement of the order on appeal has been put in place.  *See*, *e.g.*, *In re Wash. Mut., Inc.*, 461 B.R. 200, 219 (Bankr. D. Del. 2011).   Under the Divestiture Rule, the lower court retains jurisdiction to enforce its orders pending an appeal, but only so long as the lower court is not altering the appealed order.  *See id.* at 219-220 (finding it retained jurisdiction over a contempt proceeding because "the Court is not being asked to modify the order that is on appeal"); *In re Campanile*, 2019 Bankr. LEXIS 593, at *4-5 (Bankr. D.N.J. Feb. 25, 2019) (citing

18

to, among other authorities, *In re Wash. Mut., Inc.*, and concluding that it had retained jurisdiction to entertain a motion for contempt for failure to comply with a disgorgement order because the matters raised therein were "sufficiently unrelated" to a pending appeal).  As in the case at hand, were the court below to alter an order on appeal, it invariably would interfere with the issues presented on appeal with respect to that order.

The Divestiture Rule applies to situations other than the trial court merely seeking to enforce its orders as written, and generally "provides that an appeal divests the lower court of any further jurisdiction over the subject of the appeal" and applies to issues that "are directly related to the issues on appeal."  *Carr v. New Century TRS Holdings, Inc.* (*In re New Century TRS Holdings, Inc.*), No. 07-10416 (KJC), 2012 Bankr. LEXIS 2611, at *7 (Bankr. D. Del. June 7, 2012) (citing to *In re Washington Mutual, Inc.*, 461 B.R. 200, 217-18 (Bankr. D. Del. 2011)).  "The purpose of the Divestiture Rule is 'to avoid the confusion of placing the same matter before two courts at the same time and preserve the integrity of the appeal process.'" *Galope v. New Century Mortg. Corp.* (*In re New Century TRS Holdings, Inc.*), Nos. 07-10416 (KJC), 12-51000 (KJC), 2013 Bankr. LEXIS 4350, at *11-12 (Bankr. D. Del. Oct. 16, 2013) (citing *Whispering Pines Estates, Inc. v. Flash Island, Inc.* (*In re Whispering Pines Estates, Inc.*), 369 B.R. 752, 757 (B.A.P. 1st Cir. 2007)).

The Third Circuit has stated:

> As a general rule, ***the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal.*** *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 74 L. Ed. 2d 225, 103 S. Ct. 400 (1982); *United States v. Leppo*, 634 F.2d 101, 104 (3d Cir. 1980). "Divest" means what it says -- the power to act, in all but a limited number of circumstances, has been taken away and placed elsewhere. ***This judge-made rule has the salutary purpose of preventing the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously.***

*Venen v. Sweet*, 758 F.2d 117, 120-21 (3d Cir. 1985) (***emphasis*** added). The District of Delaware recently reaffirmed the rationale of *Venen*.  *See California v. Davis* (*In re Venoco, LLC*), 2020 U.S. Dist. LEXIS 8349, at *5 (D. Del. Jan. 17, 2020) (Colm F. Connolly, J.) ("The purpose of the 'judge-made rule' that generally divests district courts of jurisdiction during the pendency of an appeal is to 'prevent [] the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously.') (citing *Venen*, 758 F.2d at 121).

Application of the Divestiture Rule in the bankruptcy context is a more complex undertaking than in non-bankruptcy cases, because "a bankruptcy case typically raises a myriad of issues, many totally unrelated and unconnected with the issues involved in any given appeal." *In re Whispering Pines Estates, Inc*., 369 B.R. at 758.  "Determining what is related and unrelated to the pending appeal in a

20

bankruptcy case, however, is not always a simple task." *Id*. Nevertheless, "once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process." *Id*. at 759.

### B) By the OSC Motion, the Lender Defendants Asked the Court to Amend the Orders, Both on Appeal

The OSC Motion not only sought the issuance of an order to show cause with respect to the Orders, it also sought to modify those Orders, both of which presently are on appeal to this Court,[4] by expanding their scope of liability for the sanctions imposed thereunder.   (RR590) Accordingly, the Divestiture Rule precluded the Bankruptcy Court from altering the Orders.

Specifically, as noted above, the OSC Motion asked the Bankruptcy Court to alter the Orders by way of the Footnote in the proposed form of order to show cause. That Footnote expanded the scope of liability under the Revocation Order from Rubin & Rubin, P.A. to "I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name." RR601, n.2.

---

[4]     The Orders are on appeal in C.A. Nos. 20-1260 (CFC), 20-1262 (CFC), 20-1266 (CFC), 20-1261 (CFC), and 20-1267 (CFC).

The OSC Motion likewise sought to expand the scope of liability under the Fee-Shifting Order.  The Fee-Shifting Order imposed sanctions only upon Rubin & Rubin, P.A., the d/b/a for I. Mark Rubin, P.A.  The Lender Defendants' proposed Footnote in their form of order to show cause sought to expand the scope of liability under the Fee Shifting Order from Rubin & Rubin, P.A. to, jointly and severally, "I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name." RR601, n.2.

The Divestiture Rule precluded the Bankruptcy Court from altering the Orders, as opposed to simply enforcing them.  This is so because by altering the Orders, the Bankruptcy Court impermissibly interfered with issues presently under review by this Court, namely, whether the Bankruptcy Court had the authority to sanction entities other than I. Mark Rubin, P.A. d/b/a Rubin & Rubin, P.A., where it made no findings of inappropriate conduct of any other person or entity.   By altering the Orders, the Bankruptcy Court impermissibly interfered with the pending appeals.

> ### C)   Notwithstanding that It Lacked Jurisdiction to do so, the Bankruptcy Court Inserted the Footnote in the Contempt Order, thereby Impermissibly Expanding the Scope of the Orders by Piercing the Corporate Veil

The Bankruptcy Court did not enter an order to show cause, as requested by the Lender Defendants, but it did oblige them with the Footnote.  The Footnote expanded the scope of liability, thus altering the Orders, and such alteration violated

the Divestiture Rule.  Consequently, the Bankruptcy Court lacked jurisdiction to enter the Contempt Order.

First, through the inclusion of the Footnote, the Bankruptcy Court, through judicial fiat, pierced the corporate veil of all distinct legal entities operating under the "Rubin & Rubin umbrella" and imposed *personal* liability on all "individual(s) operating under the Rubin & Rubin, P.A. trade name."   The Lender Defendants' request for the insertion of the Footnote was a stroke of genius designed to push their years-long personal vendetta against I. Mark Rubin to its limits, see RR213, at Ex A and RR314, and the Bankruptcy Court's insertion of the Footnote apparently was motivated by a concern that the entity I. Mark Rubin, P.A. d/b/a Rubin & Rubin, P.A. would not have sufficient funds to satisfy the sanctions imposed by the Orders.[5] This concern was expressed by the Bankruptcy Court at the Hearing:

> THE COURT: Who else is going to pay these amounts other than the two individuals? They're the sole partners in their individual law firms, or they are partners in their individual law firms, and they operate under Rubin & Rubin, and they represented themselves to this court as Rubin & Rubin. … Who else is going to pay it?

---

[5]   To be clear, the Disgorgement Order did not result from any allegations that Appellant had not adequately represented and performed services on behalf of the Debtors.   The Revocation Order, which directed Appellant to disgorge all compensation received from the Debtors (and precluded Appellant from seeking compensation for three years' work of representation of the Debtors that remained unbilled), resulted from certain alleged failures to make adequate disclosures in connection with Appellant's retention as the Debtors' 11 U.S.C. § 327(e) counsel. (RR565).

23

RR716 at 14:20-15:15. Later during that hearing, the Court reiterated its concerns:

> THE COURT: So I don't understand your position. Are you telling me that your clients are going to argue that because Rubin & Rubin, P.A. is a fictitious name that they operated under and were paid by the debtors as Rubin & Rubin, P.A. and received a check written out to Rubin & Rubin, P.A., but those funds were dispersed to their individual firms and now there's no money in Rubin & Rubin, P.A., so you can't collect anything? Is that their position?

> MS. KLEIN: I think the position is that you cannot issue an order, a rule for order to show cause against somebody who [is] not named in the order to be paid. The Court ordered Rubin & Rubin, P.A. to [pay] the funds. It would be improper for the Court to issue a rule to show cause against Mark and Guy Rubin individually. That is what our position is.

RR716-717 at 16:23-17:21. The Bankruptcy Court then proceeded to enter the

Contempt order with the Footnote included.  It justified its inclusion of the Footnote

at the Hearing as follows:

> Mark and Guy Rubin and their individual law firms operate and operated throughout this case under the fictitious trade name Rubin & Rubin, P.A. Indeed, they were retained by the debtors in these cases as Rubin & Rubin, P.A. and the debtors made payments to them as Rubin & Rubin, P.A. During the hearing on the initial motion to disqualify them, both Mark Rubin and Guy Rubin made numerous representations to the Court to this effect, including that they have operated under the name of Rubin & Rubin, P.A. for approximately 30 years, hold themselves out as Rubin & Rubin, P.A., register with the Florida bar under the Rubin & Rubin, P.A. name, and Guy

24

> Rubin identified himself to the Court as "of counsel" to the
> Rubin & Rubin law firm.

RR720 at 29:24-30:19. The Bankruptcy Court's justification is contrary to both the

factual record and established legal precedent and constitutes reversible error.

### 1.    It Was Factual Error for the Bankruptcy Court to Conclude that Rubin & Rubin, P.A., Is a Fictitious Entity

The record is clear that Rubin & Rubin, P.A. is not a "fictitious entity made

up of separate law firms[.]" (RR289) *Cf.* RR223 at 9:22-10:2 (counsel to the Lender

Defendants arguing to the Bankruptcy Court that Appellant had failed to disclose in

its retention application that Appellant is "an entity that just doesn't exist").

Additionally, there is no "Rubin & Rubin umbrella." [RR290].  The "umbrella" is I.

Mark Rubin, P.A., not its fictitious trade name. *See*, *e.g.*, RR205 ("During the

entirety of its existence, I. Mark Rubin, P.A. has always used its trade names,

including Rubin & Rubin, P.A., in its dealings with the public and the Courts

throughout the United States."); RR214 at ¶ 2 (Guy Rubin stating he is "of counsel

to the "firm" that goes by the trade name "Rubin & Rubin, P.A."); 5-121-19

Deposition of I. Mark Rubin at 118:3-18 (I. Mark Rubin testifying that Rubin &

Rubin, P.A., does not exist as a separate entity but is merely a trade name).

The legal relationship between the firms I. Mark Rubin, P.A., and Rubin Law

Associates P.A. was summarized as follows by counsel for the Chapter 7 Trustee:

> In the second supplemental declaration in support of the
> retention application filed at Docket 407, I. Mark Rubin

> declared under [penalty] of perjury that he was the sole owner and president of I. Mark Rubin, P.A., that Guy Rubin was the sole owner and president of Rubin Law Associates P.A., and that I. Mark Rubin and Guy Rubin operate under the umbrella of Rubin & Rubin as a partnership of their respective professional associations, which are I. Mark Rubin, P.A. and Rubin Law Associates, P.A.

RR752 at 12:10-19.  There simply was no factual basis for the Bankruptcy Court to conclude anything other than that the "umbrella" was the legal entity I. Mark Rubin, P.A., and not some fictitious, non-existent trade name.

### 2.    It Was Legal Error for the Bankruptcy Court to Disregard the Separateness of Legal Entities and Impose Liability on the Individuals Behind them

Case law is legion that disregarding the separateness of a legal entity is not something to be undertaken lightly, and first requires, at a minimum, a finding of fraud or gross mismanagement by a preponderance of the evidence.  Such a finding is required, irrespective of whether Delaware or Florida law applies.

> [P]ersuading a Delaware court to pierce the corporate veil is a difficult task. Absent compelling cause, a court will not disregard the corporate form or otherwise disturb the legal attributes, such as limited liability, of a corporation. Although the legal test for doing so "cannot be reduced to a single formula that is neither over- nor under-inclusive," our courts have only been persuaded to "pierce the corporate veil" after substantial consideration of the shareholder-owner's disregard of the separate corporate fiction and the degree of injustice impressed on the litigants by recognition of the corporate entity.

26

*Midland Interiors, Inc. v. Burleigh*, C.A. No. 18544, 2006 Del. Ch. LEXIS 220, at

*8 (Ch. Dec. 19, 2006). "The legal entity of a corporation will not be disturbed until

sufficient reason appears." *Harco Na'l Ins. Co. v. Green Farms, Inc*., C.A. No.

1131, 1989 Del. Ch. LEXIS 114, at *10 (Ch. Sep. 19, 1989).  Even under a federal

Delaware standard, a multi-factor analysis is required to determine whether a

principal may be considered a company's alter ego:

> an alter ego analysis must start with an examination of
> factors which reveal how the corporation operates and the
> particular defendant's relationship to that operation. These
> factors include whether the corporation was adequately
> capitalized for the corporate undertaking; whether the
> corporation was solvent; whether dividends were
> paid, corporate records kept, officers and directors
> functioned properly, and other corporate formalities were
> observed; whether the dominant shareholder
> siphoned corporate funds; and whether, in general, the
> corporation simply functioned as a facade for the
> dominant shareholder.

*U.S. v. Golden Acres, Inc*., 702 F. Supp. 1097, 1104 (D. Del. 1988) (discussing

federal alter ego standard).  Under Florida law, the analysis is substantially similar:

> A general principle of corporate law is that a corporation
> is a separate legal entity, distinct from the persons
> comprising them. …To "pierce the corporate veil" three
> factors must be proven:
> (1) the shareholder dominated and controlled the
> corporation to such an extent that the corporation's
> independent existence, was in fact non-existent and the
> shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently
> or for an improper purpose; and

27

(3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (internal citations and quotations omitted).  Before inserting the Footnote, the Bankruptcy Court undertook no analysis to determine whether a piercing of the corporate veil of the I. Mark Rubin, P.A. entity was appropriate; and there is no evidence of fraud in the record.

The Bankruptcy Court, without any inquiry or finding whether such a drastic remedy was appropriate under applicable law, impermissibly expanded the scope of liability from the entity that had been retained as the Debtors' section 327(e) counsel–Rubin & Rubin, P.A., the d/b/a of I. Mark Rubin, P.A.–beyond that firm to other individuals and law firms that, as the Bankruptcy Court previously acknowledged, are legally distinct from I. Mark Rubin, P.A., to wit, Rubin Law Associates, P.A. (Guy Rubin's firm), Guy Bennett Rubin P.A. (a long-dissolved entity), and "any other law firm or individual … operating under the Rubin & Rubin, P.A. trade name." RR729; RR290 ("the firms operating under the Rubin & Rubin umbrella are two distinct legal entities").  To be clear, there was only one entity that operated under a trade name Rubin & Rubin, P.A.: I. Mark Rubin, P.A. Everyone else that the Bankruptcy Court included in shotgun approach in the Footnote was performing services under the authority granted to Rubin & Rubin, P.A. as 327(e) counsel, labeled by the Bankruptcy Court as the so-called "umbrella."

28

Lastly, the Bankruptcy Court likewise impermissibly expanded the scope of liability over entities and individuals that have not appeared before it, that never rendered services to the Debtors, never participated in any of the acts and omissions forming the basis for the sanctions, and over which it has no jurisdiction.  The phrase "any other law firm or individual operating under the Rubin & Rubin, P.A. trade name" contained in the Footnote effectively imposes joint and several liability for the sanctions against Rubin & Rubin, P.A. on all "of counsel" of that firm, all associates, and all paralegals and secretaries, wherever located.  As noted supra, such an order imposing sanctions is devoid of procedural and substantive due process where the Court has not placed such "other law firm or individual[s]" on notice of the claims against them with an opportunity to defend themselves.[6]

## II.   THE BANKRUPTCY COURT ERRED, AS A MATTER OF LAW, IN IMPOSING, BY CONTEMPT ORDER, SANCTIONS FOR NON-COMPLIANCE WITH THE ORDERS ON ENTITIES AND INDIVIDUALS OTHER THAN RUBIN & RUBIN, P.A.

The Bankruptcy Court, by the Contempt Order, imposed joint and several liability for a $1,000 per diem fine for non-compliance with the Orders on "I. Mark

---

[6]     In addition to the obvious problems with piercing the corporate veil without a legally recognized basis, the Court had no evidence before it that Rubin Law Associates, P.A., Guy Bennett Rubin P.A., Guy Rubin, "and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name" had knowledge of the amounts paid to I. Mark Rubin, P.A. subject to disgorgement or ever received any of the funds to be disgorged.

Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin, P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name."  It was reversible error for it to do so.

The Orders only imposed sanctions upon Rubin & Rubin, P.A. and, rightfully so, as only Rubin & Rubin, P.A. had been retained as counsel to the Debtors in the underlying bankruptcy cases and only Rubin & Rubin, P.A. received funds from the Debtors.[7]  The Contempt Order, nevertheless, makes entities and individuals other

---

[7]     Both Guy and I. Mark Rubin explained the process by which Rubin & Rubin, P.A. was paid by the Debtors:

> THE COURT: Okay. So when Rubin & Rubin got paid in this case, Rubin & Rubin, P.A., gets, gets a, I assume it was by wire transfer, goes into the trust account, and then it's time to split it up between the two brothers, do you get a check personally or does it go to your firm?
>
> MR. G. RUBIN: No, I do not -- I never get a check personally. Everything is through my law firm.
>
> THE COURT: So Rubin & Rubin, P.A., then cuts a check to your law firm --
>
> MR. G. RUBIN: Yes.

RR228 at 30:12-21 (Guy Rubin addressing the Bankruptcy Court).

> MR. M. RUBIN: In, in this case there have been a number of fee applications. Mr. Chronis says that we've been paid $800,000, which is not true. We've -- there's been $800,000 in fee applications that have been approved, but his firm and the secured lenders have stood in front of the -- allowing the debtor-in-possession account to, to actually pay those, those quarterly interim fees. Several of them were paid at the beginning of the case, but not all of them have. But when those fees are paid out of the debtor-in-

than Rubin & Rubin, P.A. responsible for Rubin & Rubin, P.A.'s compliance with the Orders by the imposition of a joint and several penalty, including on entities and individuals that, (a), as noted above, have not appeared before the Bankruptcy Court, never rendered services to the Debtors, never participated in any of the acts and omissions forming the basis for the sanctions (an issue in a separate appeal), and over which the Bankruptcy Court has no jurisdiction;[8] and (b) have no control over whether or not Rubin & Rubin, P.A. complies with the Orders.

The Bankruptcy Court's imposition of an arbitrary $1,000 per diem fine for non-compliance with the Orders, jointly and severally, on entities and individuals other than Rubin & Rubin, P.A., thus is reversible error.

### III.   THE BANKRUPTCY COURT ERRED IN ENTERING THE CONTEMPT ORDER WITHOUT FIRST ISSUING AN ORDER TO SHOW CAUSE AND DEPRIVING APPELLANT OF ITS RIGHT TO PRESENT DEFENSES IN A CONTEMPT HEARING

The Bankruptcy Court held Appellant in contempt without affording Appellant the opportunity to present defenses to its non-compliance with the Orders. To do so constitutes reversible error.

------------------------

possession account, there is a wire transfer to goes to Rubin & Rubin.

RR228 at 32:7-17 (I. Mark Rubin addressing the Bankruptcy Court).

[8]     The Bankruptcy Court lacked jurisdiction to award these sanctions.  This issue is reviewed by the appellate Court *de novo*.  *Haagensen v. Reed*, 666 F. App'x 140, 142 n.3 (3d Cir. 2016).

By the OSC Motion, the Lender Defendants asked the Bankruptcy Court to

issue an order:

> upon Rubin & Rubin to show cause why … should not be
> ordered to comply immediately with the Fee Shifting
> Order and the Disqualification and Disgorgement Order
> or, if it does not so comply, be held in contempt of court
> for its violation of two court orders …

RR601.  Appellant responded to the OSC Motion setting forth why no order to show

cause should issue.

At the Hearing, the Bankruptcy Court did not issue an order to show cause.

Instead, it agreed with argument first presented by the Lender Defendants at the

Hearing that evidence of non-compliance with the Orders was the only matter for

the Court to consider and that no evidentiary hearing at which Appellant could

present evidence in its defense was warranted:

> THE COURT: Well, I [Rubin & Rubin, P.A.'s] argument
> is it's a two-step process. So you filed your position for
> order to show cause. I then have to issue an order to show
> cause why I shouldn't hold them in contempt and hold
> another hearing on that. What's your view on that?
>
> MR. CHRONIS: Our view, Your Honor, is that there's no
> reason for that. That the evidence is undisputed. *I started*
> *out my arguments this morning by setting forth that*
> *which is undisputed. That is the evidence. They haven't*
> *paid, there's no question.* The Court has already made a
> finding as to who Rubin & Rubin, P.A. is and who it
> includes. *There is no further evidence that is required for*
> *the Court to consider*, and obviously maybe they raised
> what they believe is an open evidentiary issue, but I'm not

aware of any that would preclude the Court from entering
a rule to show cause now.

RR718-719 at 24:9-25:8 (*emphasis* added).

> [MR. CHRONIS:] *There isn't anything else to discuss.
> There isn't anything else to present evidence on. And
> therefore, I don't believe that an evidentiary hearing is
> necessary under these, you know, under these facts.*

RR719 at 28:16-21 (*emphasis* added).  Concurring, the Bankruptcy Court found that

"the requirements for the imposition of civil contempt have been met" and tasked

the Lender Defendants with submitting an appropriate form of order.  RR720 at

31:18-9, 32:14-6.

It was improper for the Bankruptcy Court to short-circuit the contempt

proceeding.  A proper contempt proceeding proceeds in federal courts as follows:

> A party seeking to initiate contempt proceedings may do
> so by filing a motion for a show-cause order. A motion for
> an order to show cause, which is distinct from a motion
> for an order on the merits of the alleged contempt, is
> "asking only for a preliminary order directing the alleged
> contemnor to show cause why the court should not find
> him in contempt." *SEC v. Hyatt*, 621 F.3d 687, 696 (7th
> Cir. 2010) … "The purpose of [a show-cause] motion is to
> persuade the court that there should be a hearing at which
> the factfinder will ultimately evaluate whether a finding of
> contempt is appropriate on the evidence
> presented." *Sommerfield v. City of Chi.*, 252 F.R.D. 407,
> 413 (N.D. Ill. 2008). Thus, a district court may exercise its
> civil contempt power after: (1) the moving party files a
> motion that requests the
> court issue an order to show cause why the defendant
> should not be found in civil contempt. The motion must

33

> cite the injunctive provision(s) at issue and sufficiently
> allege that the purported contemnor has refused to obey its
> mandate; (2) if satisfied that the motion states a case of
> noncompliance, the court grants the order and schedules a
> contempt hearing; and (3) at the hearing, if the moving
> party proves what it alleged in its motion by clear and
> convincing evidence, the court determines the sanctions
> necessary to ensure the contemnor's future
> compliance. *Reynolds v. Roberts*, 207 F.3d 1288, 1298
> (11th Cir. 2000).

*Arlington Indus. v. Bridgeport Fittings, Inc*., No. 3:02-CV-0134, 2016 U.S. Dist.

LEXIS 169372, at *4-5 (M.D. Pa. Dec. 7, 2016).

The first step in the two-step process is for the party initiating contempt

proceedings to present "sufficiently definite facts that … [a] violation of the Court's

prior order [has occurred] and warrant[s] a contempt hearing." *Arlington Indus. v.*

*Bridgeport Fittings, Inc*., No. 3:02-CV-0134, 2016 U.S. Dist. LEXIS 169372, at *6

(M.D. Pa. Dec. 7, 2016). The significance of this step is that, upon a *prima facie*

showing, the Court may permit discovery whether a finding of contempt is

appropriate, to be presented at a contempt hearing. *Wesley Jessen Corp. v. Bausch*

*& Lomb, Inc*., 256 F. Supp. 2d 228, 229 (D. Del. 2003) ("To obtain discovery based

on allegations of civil contempt, Wesley Jessen must make prima facie showing that

a court order has been disobeyed.").

In the case underlying this appeal, discovery, for instance, would have

confirmed what already is in the record: that no entities or individuals the

Bankruptcy Court made liable for the sanctions received any payments from the

34

Debtors and that there, consequently, was no basis for the Bankruptcy Court to order those entities and individuals to "disgorge" any funds.

Here, the Bankruptcy Court let itself be convinced by counsel for the Lender Defendants that no evidentiary hearing was required to afford Appellant with an opportunity to present its defenses at a contempt hearing, i.e., the due process afforded by the second step in a typical contempt proceeding. RR719 at 28:16-21 ("There isn't anything else to discuss. There isn't anything else to present evidence on. And therefore, I don't believe that an evidentiary hearing is necessary under these, you know, under these facts."). It was reversible error for the Bankruptcy Court to follow the Lender Defendants' advice.

The elimination of a contempt hearing and the short-circuiting of the appropriate contempt procedure as set forth in *Arlington Indus.* deprived Appellant (and all the other entities and individuals now in contempt of Court by virtue of the Footnote) from raising defenses and producing evidence showing their inability to comply with the Orders. *See U.S. v. Rylander,* 460 U.S. 752, 757 (1983) (in "a civil contempt proceeding … a defendant may assert a *present* inability to comply with the order in question"). While the Bankruptcy Court precluded Appellant from raising its inability to comply at a contempt hearing, Appellant has submitted a sworn declaration attesting to its inability to comply. (RR738). Appellant's inability to comply with the Orders renders the Contempt Order, including its $1,000 per diem

35

fine, punitive.  *Camerons Hardware Inc. v. Indep. Blue Cross*, 363 F. App's 197,

201 (3d Cir. 2010) ("an order of civil contempt [is or will become] punitive if a

contemnor is unable to comply with the order (citing *U.S. v. Harris,* 582 F.3d 512,

520 (3d Cir. 2009)).  The Contempt Order must be reversed.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellant respectfully requests that the Contempt
Order be reversed, and that this Court grant it such other and further relief as is just
and proper.

Dated: August 6, 2021
      Wilmington, Delaware

Respectfully submitted,

KLEIN            LLC

<u>/s/     Julia     Klein</u>
Julia B. Klein (DE 5198)
225 W. 14th Street, Suite 100
Wilmington, Delaware 19801
klein@kleinllc.com

*Counsel for Appellant*

36