IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: NNN 400 CAPITOL CENTER 16 LLC, *et al.*, | : | Chapter 7 |
| | : | |
| | : | Bankr. No. 16-12728-JTD |
| Debtors. | : | |
| | : | Adv. No. 18-50384-JTD |

| | | |
|---|---|---|
| RUBIN & RUBIN, P.A., | : | |
| | : | |
| Appellant, | : | Civ. No. 21-816-CFC |
| v. | : | |
| | : | |
| DON A. BESKRONE, SOLELY AS | : | |
| CHAPTER 7 TRUSTEE OF NNN 400 | : | |
| CAPITOL CENTER 16, LLC, *et al.*, | : | |
| | : | |
| Appellees. | : | |

**<u>OPINION</u>**

March 24, 2022
Wilmington, Delaware

_____

CONNOLLY, UNITED STATES DISTRICT JUDGE

Appellant Rubin & Rubin, P.A. has appealed the Bankruptcy Court's May 26,

2021 Order (B.D.I. 785) (LA0001-LA0003) ("Contempt Order")[1] entered in an

adversary proceeding[2] after Appellant failed to comply with two prior Bankruptcy

Court Orders ordering the payment or disgorgement of certain fees and expenses.

Also before the Court is Rubin & Rubin, P.A.'s motion for stay pending the appeal

(D.I. 4) ("Stay Motion").  The Contempt Order is final,[3] and the Court has

jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).  The Court will

affirm the Contempt Order, in part, and deny the Stay Motion as moot.

## I.   BACKGROUND

### A.   Overview of the Parties

Debtors are 32 tenant-in-common entities created to acquire an ownership

interest in an office building in Little Rock, Arkansas ("Property").  The Property

_____

[1] The docket of the Chapter 7 case, captioned *In re NNN 400 Capitol Center 16 LLC, et al.*, No. 16-12728 (JTD) (Bankr. D. Del.), is cited herein as "B.D.I. __." The Appendix (D.I. 24) filed in support of Appellant's opening brief is cited herein as "RR__." The Appendix (D.I. 30) filed in support of the Chapter 7 Trustee's answering brief is cited herein as "TA__." The Appendix (D.I. 31) filed in support of Berkadia's answering brief is cited herein as "LA __."

[2] The docket of the adversary proceeding, captioned *Don. A. Beskrone v. Wells Fargo Bank, N.A., et al.*, Adv. No. 18-50384 (JTD) (Bankr. D. Del.) ("Adversary Proceeding"), is cited herein as "Adv. D.I. __."

[3] The Contempt Order is final in that it disposes of all parties' claims. *See Catlin v. United States*, 324 U.S. 229, 233-34 (1945).

secured a loan.  Debtors failed to repay that loan, and foreclosure proceedings were initiated.  Debtors filed for chapter 11 bankruptcy protection on December 9, 2016 after refinancing attempts failed.  The Debtors thereafter filed the Adversary Proceeding against Lender Appellees.  Lender Appellees are five of the six defendants in the Adversary Proceeding.[4]

On March 18, 2021, the Bankruptcy Court entered an order converting the Debtors' chapter 11 cases to chapter 7 cases (the "Conversion Order").  (RA520-522).  The same day, the Office of the United States Trustee for the District of Delaware ("UST") appointed Don Beskrone, Esq. as the Chapter 7 Trustee for the Debtors' bankruptcy estates.  (*See* B.D.I. 720).

Appellant Rubin & Rubin, P.A. is a fictitious entity or trade name under which brothers Mark Rubin and Guy Rubin and their law firms operate.  Rubin & Rubin, P.A. is former counsel to the Debtors in the above-captioned bankruptcy cases and in the Adversary Proceeding.

**B.      Debtors' Retention of Rubin & Rubin, P.A.**

On December 20, 2016, Debtors filed an application to retain and employ Rubin & Rubin, P.A. to serve as special counsel under § 327(e) to, among other

---

[4] Wells Fargo, N.A., in its capacity as Trustee for the Registered Holders of Comm 2006-C8 Commercial Mortgage Pass Through Certificates; Berkadia Commercial Mortgage, LLC ("Berkadia"); LNR Partners, LLC; Little Rock-400 West Capitol Trust; and Taconic Capital Advisors L.P.  The sixth defendant is Somera Road, Inc. ("Somera").

things, advise Debtors regarding the foreclosure action and refinancing efforts, "including the retention and management of experts for such services[.]" (LA0045-LA0072) ("Retention Application"). In disclosing the "principal attorneys and paralegals proposed to represent the Debtors," the Retention Application disclosed I. Mark Rubin and Guy Rubin. (RR010). I. Mark Rubin, a partner at the law firm of Rubin and Rubin, P.A., filed a verified statement in support of the Retention Application. (RR020-026). The Retention Application provided, among other things, that Rubin & Rubin, P.A. had not shared or agreed to share its compensation "with any party or person, other than with the shareholders, counsel and associates of Rubin and Rubin." (LA0056 at ¶ 32). Attorneys Mark and Guy Rubin filed multiple sworn statements in support of the Retention Application repeating that same averment. (*See* LA0070 at ¶ 13; LA0612 at ¶ 12.g).

On March 1, 2017, the Bankruptcy Court entered an order approving Rubin & Rubin's retention. (LA0073-LA0076). Throughout the Bankruptcy Proceedings, Rubin & Rubin, P.A. filed fee petitions in the name of "Rubin & Rubin, P.A.," and the Bankruptcy Court's related orders allowed compensation to "Rubin & Rubin, P.A." (*See* LA0077-LA0188; LA0335-LA0378; LA0189-LA0248; LA0257-LA0331; LA0379-LA0431; LA0432-LA0480; LA0249-LA0252; LA0253-LA0256; LA0332-LA0334; LA0481-LA0485). Rubin & Rubin, P.A. attorneys Mark and Guy Rubin also sought and obtained admission *pro hac vice* in the bankruptcy proceedings. (LA0042; LA0043; LA0044). In those *pro hac vice* motions, Mark

3

and Guy Rubin signed certifications identifying their law firm as "RUBIN AND RUBIN, P.A." (LA0042; LA0043; LA0044).

### C.  Fee-Shifting Order

#### 1.  The Show Cause Motion and Hearing

On June 19, 2019, the Bankruptcy Court held a status conference to address, among other things, certain disclosures made by Mark Rubin during his May 2019 deposition concerning the entity which had filed the Retention Application—"Rubin & Rubin, P.A." Specifically, Mark Rubin testified that Rubin & Rubin, P.A. was a fictitious name under which Mark and Guy Rubin and their law firms operated in their representation of the Debtors. (*See* LA0560). This fact was not disclosed in the Retention Application, however. (*See* LA0045-LA0072). The Bankruptcy Court therefore asked the parties to brief the "serious issue" of "what representations were made to the Court regarding the retention of Rubin & Rubin." (LA0506-LA0507 at 20:25-21:5).

A few days later, on June 25, 2019, Rubin & Rubin, P.A. filed its Application for Registration of Fictitious Name with the Florida Secretary of State, which indicated that the owners of the fictitious name "Rubin & Rubin, P.A." are Rubin Law Associates, P.A. and I. Mark Rubin, P.A. (TA0001; *see also* RR204 ¶ 10). The application was signed by I. Mark Rubin for IMRPA (presumably, I. Mark Rubin, P.A.). (TA0001).

On July 1, 2019, Lender Appellees and Somera filed a Motion for Rule to

Show Cause ("Show Cause Motion"), seeking an order for a rule to show cause why Rubin & Rubin, P.A. should not be disqualified from serving as counsel to Debtors and required to disgorge its fees in connection with its failure to disclose the fee-sharing arrangement between I. Mark Rubin, P.A. and Guy Rubin's law firm, Rubin Law Associates, P.A. (LA0541-LA0546; LA0547-LA0574).   The Show Cause Motion further argued that Rubin & Rubin, P.A. had improperly split fees between I. Mark Rubin, P.A., Rubin Law Associates, P.A., and any related "Rubin & Rubin" law firm or attorney operating before the Bankruptcy Court under the "Rubin & Rubin" trade name, in violation of the Bankruptcy Code and Rules. (LA0541-LA0546; LA0554, LA0568-LA0570).

On July 12, 2019, I. Mark Rubin filed a supplemental declaration stating that the Retention Application inadvertently used "and" instead of "&" in referring to the name of the law firm—thus, the law firm of Rubin & Rubin, P.A. was incorrectly referred to as Rubin and Rubin, P.A. (RR202 ¶ 3). I. Mark Rubin further averred that he works with Guy Rubin "under the trade name Rubin & Rubin as well as under the registered trade name Rubin & Rubin, P.A." (RR204 ¶ 9). On July 22, 2019, Guy Rubin filed a declaration stating that he is of counsel to the law firm of Rubin & Rubin, P.A. (RR214 ¶ 1). On August 23, 2019, I. Mark Rubin filed a second supplemental declaration attesting that (i) he is the sole owner and president of I. Mark Rubin, P.A., a law firm practicing under the fictitious name Rubin & Rubin, P.A.; (ii) Guy Rubin is the sole owner and president of Rubin Law

Associates, P.A.; (iii) the names Rubin & Rubin, P.A. and Rubin & Rubin are fictitious names, used respectively, by I. Mark Rubin, P.A. and Rubin Law Associates, P.A., both professional associations organized under the laws of the State of Florida; and (iv) I. Mark Rubin and Guy Rubin operate under the umbrella of Rubin & Rubin as a partnership of their respective professional associations. (TA0002-0003).

Mark and Guy Rubin also filed declarations in support of Debtors' response to the Show Cause Motion in which they averred that they had not improperly shared fees because Rubin Law Associates, P.A. was "of counsel" to Rubin & Rubin, P.A. (LA0596-LA0607; LA0608-LA0614). In other words, to avoid any finding of improper fee-sharing, Rubin & Rubin, P.A. took the position that the attorneys and law firms acting as counsel to the Debtors operated together as a single law firm under the "Rubin & Rubin" trade name for purposes of the bankruptcy proceedings. Rubin & Rubin, P.A.'s response to the Show Cause Motion, and attorneys Mark and Guy Rubin's sworn statements in connection with the same, confirmed that:

- "Mark and Guy Rubin have worked together under the Rubin & Rubin name for approximately thirty years." (LA0581).

- "[F]or its entire life span Rubin Law Associates, P.A. has continuously associated, and worked jointly, with I. Mark Rubin, P.A., and together the two have jointly represented clients in hundreds of cases. . . . The two have held themselves out as a partnership – and not as individual entities – for the past thirty years under the Rubin & Rubin banner." (*Id.*)

- "On its website, Rubin & Rubin, P.A., lists Guy and Mark as each being members of the firm. . . . As far as the public is concerned, they are both 'Rubin & Rubin, P.A.'" (*Id.*)

- "I [Guy Rubin] am 'of counsel to the law firm of Rubin & Rubin, P.A." and "regularly associate with Rubin & Rubin on TIC cases," and ***Mark and Guy Rubin's joint practice on these Bankruptcy Proceedings is a "functional reality.***" (LA0609-LA0612 at ¶¶ 2, 10-12 (emphasis added)).

- "In representing the Debtors in this matter both pre- and post-petition, ***Rubin & Rubin, P.A. has acted as a single law firm, which it is.***" (LA0604 at ¶ 25 (emphasis added)).

- Mark and Guy Rubin share the Rubin & Rubin office space, paralegals, a website (which identifies Mark and Guy Rubin as both being members of the Rubin & Rubin law firm), and an email extension and see and/or communicate with each other multiple times per day to discuss cases. (LA0600-LA0601 at ¶ 14; LA0610-LA0612 ¶¶ 9, 12; *see also* LA0581).

- In cases where RLA represents clients who have retained Rubin & Rubin, "Guy and his firm have acted in an 'of counsel' capacity to Rubin & Rubin, P.A. ***That is precisely the case here.***" (LA0599 at ¶ 9 (emphasis added); *see also* LA0581, LA0589, LA0591).

The Bankruptcy Court held a hearing on the Show Cause Motion on July 23, 2019

("Show Cause Hearing"). (*See* LA0615-LA0678 ("7/23/2019 Tr.")). One of the

Debtors' attorneys, Eric D. Freed, stated to the Court at this hearing that:

"[t]hroughout the course of this representation Rubin & Rubin has functioned as a

single law firm. It is a single law firm." (*Id.* at 26:13-15).

### 2.    The Fee-Shifting Order

On August 9, 2019, the Bankruptcy Court entered an order (LA0679-

LA0686) finding that Rubin & Rubin, P.A. had admitted to providing the

Bankruptcy Court with "inaccurate information" in its Retention Application and that Rubin & Rubin, P.A.'s disclosures filed in support of its retention were "defective" (LA0682-LA0683). However, the Bankruptcy Court found that no impermissible fee-sharing occurred between I. Mark Rubin, P.A. and Rubin Law Associates, P.A. (*See* LA0685-LA0686). The Bankruptcy Court relied on Mark and Guy's repeated sworn statements and found that "the two firms operating as Rubin & Rubin are for all intents and purposes a partnership" with Mark and Guy Rubin "operating under the [Rubin & Rubin] umbrella." (*Id.*) The Bankruptcy Court therefore ordered Rubin & Rubin, P.A. to correct its Retention Application disclosures "to provide full and accurate information" and to "pay the Defendants' attorneys' fees and costs in bringing [the Show Cause] Motion" (the "Fee-Shifting Sanction"). (*Id.*)

On August 23, 2019, Rubin & Rubin, P.A. filed a motion for reconsideration of the Fee Shifting Sanction (LA0687-LA0708) ("Reconsideration Motion"), arguing that the Fee-Shifting Sanction was not authorized because of a "lack of due process provided" and that the Bankruptcy Court was not authorized to assess the Fee-Shifting Sanction pursuant to its inherent authority absent a finding of bad faith or deliberate misconduct. (LA0690-LA0695). Rubin & Rubin, P.A. did not challenge the Bankruptcy Court's ruling that Mark and Guy Rubin, and their law firms, had operated jointly under the "Rubin & Rubin umbrella" (which is not surprising, because Mark and Guy Rubin advocated for that very ruling). (*See id.*)

8

Following briefing on the Reconsideration Motion (LA0709-LA0732; LA0733-LA0738), the Bankruptcy Court partially granted Rubin & Rubin, P.A. relief on October 19, 2019 (LA0739-LA0746), acknowledging that it could not impose the Fee-Shifting Sanctions pursuant to its inherent authority absent a finding of bad faith or deliberate misconduct.  However, the Bankruptcy Court imposed the same Fee-Shifting Sanction against Rubin & Rubin, P.A. under § 105 of the Bankruptcy Code (and, in the alternative, under Federal Rule of Bankruptcy Procedure 9011).  (LA0739-LA0746).  The Bankruptcy Court also rejected Rubin & Rubin, P.A.'s argument that it was not afforded due process, noting that "[e]very issue relevant to the Court's imposition of sanctions was addressed in the [Show Cause Motion] briefing and at the July 23rd hearing," and Rubin & Rubin, P.A. "had ample notice and opportunity to be heard on the issues relevant to the sanctions." (LA0743-LA0744).

On October 23, 2019, Rubin & Rubin, P.A. filed a motion for clarification of the Reconsideration Order (Adv. D.I. 322) ("Clarification Motion"), in which its sole request was that the Bankruptcy Court permit Rubin & Rubin, P.A. to pay the Fee-Shifting Sanction after the final disposition of the Adversary Proceeding.  On September 4, 2020, at the close of the Adversary Proceeding, the Bankruptcy Court entered an order (LA0020) ("Fee-Shifting Order"), directing Rubin & Rubin, P.A. to pay the Fee-Shifting Sanction "***within thirty days from the entry of this [Fee-Shifting Order].***" (*Id.* (emphasis in original)).  Rubin & Rubin, P.A. filed an appeal

9

of the Fee-Shifting Order on September 18, 2020.  (Civ. Nos. 20-1260 (CFC), 20-1261 (CFC), 20-1262 (CFC), 20-1266 (CFC), and 20-1267 (CFC) (together, "Prior Appeals")).  Rubin & Rubin, P.A. did not seek a stay of the Fee-Shifting Order pending the Prior Appeals.  Rubin & Rubin, P.A. ignored the Fee-Shifting Order and did not pay.

### D.    Disqualification Order

On January 30, 2020, the UST filed a *Motion to Revoke or Terminate Retention of Rubin and Rubin, P.A. and Disallow Fees and Expenses of Rubin and Rubin, P.A. and Seth Denison* (LA0753-LA0790) ("Disqualification Motion").  The UST argued that Rubin & Rubin, P.A. violated the Bankruptcy Rules and Code by, among other things: (1) failing to disclose multiple fee-sharing agreements with a third-party broker, Mr. Seth Denison ( "Denison Fee-Sharing Agreements"); (2) filing false and materially deficient sworn statements concerning the existence of any fee-sharing agreements; and (3) partially performing one of the Denison Fee-Sharing Agreements from the Debtors' debtor-in-possession financing account without notice or court approval.  (*Id.*)  The UST also argued that Rubin & Rubin, P.A.'s retention should be revoked or terminated and that Rubin & Rubin, P.A.'s fees and expenses should be disallowed.  (*Id.*)

Lender-Appellees field a joinder and reply in support of the Disqualification Motion ("Joinder") setting forth certain additional bases for the relief sought in the Disqualification Motion.  (LA0791-LA0817; LA0844-LA0870).  The parties,

including Appellant, had the opportunity to and did file lengthy briefs addressing the Disqualification Motion and the Joinder. (LA0818-LA0832; LA0833-LA0843; LA0871-LA0891; LA0892-LA0959).

The Disqualification Motion and Joinder argued that both Mark and Guy Rubin (and their associated law firms) should be held jointly liable for the violations addressed in the Disqualification Motion and Joinder. In the Joinder, Lender Appellees argued that Guy Rubin should not be permitted to distance himself and his firm from Mark Rubin and his firm in connection with the Disqualification Motion and the issues raised therein. (LA0801-LA0803 at ¶¶ 30-33). Lender Appellees based this argument on the fact that Rubin & Rubin, P.A. had, in connection with the Show Cause Motion, submitted briefing and sworn statements confirming that Mark and Guy Rubin and their law firms were retained jointly and operated jointly in the bankruptcy proceedings under the Rubin & Rubin, P.A. trade name. (*Id.*)

In its opposition, Rubin & Rubin, P.A. responded to this argument by affirmatively representing that it *was **not*** arguing that the individuals and/or law firms operating as Rubin & Rubin, P.A. (including Mark and Guy Rubin and their individual law firms) should be assessed separately for purposes of the Disqualification Motion and/or Order. (LA0881 at ¶ 24 ("the Lender Defendants speculate – again – that Rubin & Rubin will respond to the Motion and the Joinders by attempting to separate the firm. No such 'tactic' has been deployed in response

11

to the Motion, or in response to the Joinders. . . .  If any cause exists for the Court to impose any remedy upon one or more counsel, *or the firm as a whole*, or to revoke the *pro hac vice* privilege to appear before this Court, Rubin & Rubin is confident this Court will appropriately assess responsibility where it belongs . . . . Accordingly, there is no need to further respond to this portion of the Joinder") (emphasis added).  Rubin & Rubin, P.A. therefore conceded that all firms and individuals operating under the Rubin & Rubin, P.A. trade name would be subject to any order on the Disqualification Motion.  (*See id.*)

On July 29 and 30, 2020, the Bankruptcy Court held a two-day evidentiary hearing on the Disqualification Motion (LA0960-LA1326; LA1327-LA1525) ("Disqualification Hearing").  On September 4, 2020, the Bankruptcy Court entered the Disqualification Order finding, among other things, that Rubin & Rubin, P.A. violated the Bankruptcy Rules and Bankruptcy Code by, among other things, making false and/or materially deficient disclosures to the court, entering into and partially performing a post-petition fee-sharing agreement with Mr. Denison, and filing false declarations in connection with its retention as counsel to Debtors. (LA0040-LA0041).  Based on these findings, the court disqualified Rubin & Rubin, P.A. from acting as counsel to the Debtors; ordered Appellant to, *within 30 days (i.e., on or before October 4, 2020)*, disgorge all fees and expenses paid or to be paid to it in connection with its representation of the Debtors; and ordered Rubin & Rubin, P.A. to refund, *within 30 days (i.e., on or before October 4, 2020)*, the

Debtors for amounts paid to Mr. Denison in partial satisfaction of its improper fee sharing agreement in the amount of $11,400 ("Denison Refund").  (LA0041).

On September 18, 2020, as part of the Prior Appeals, Rubin & Rubin, P.A. appealed the Disqualification Order.  (*See* LA1526-LA1552; LA1553-LA1579).  Rubin & Rubin, P.A. did not seek a stay of the Disqualification Order pending the appeal.  Rubin & Rubin, P.A. ignored the Disqualification Order and did not pay.

### E.   Contempt Order

More than seven months later, on April 28, 2021, Lender Appellees filed a *Motion for a Rule to Show Cause Why Rubin & Rubin Should Not Be Ordered to Comply Immediately With Two Court Orders It Has Violated Or, If It Does Not So Comply, Be Held in Contempt of Court* (LA1580-LA1618) ("Contempt Motion") due to Rubin & Rubin's failure to comply with the payments required under the Fee-Shifting Order and Disqualification Order (collectively the "Prior Orders").  Lender Appellees requested that Rubin & Rubin, P.A. be ordered to show cause why it should not be ordered to immediately comply with the Prior Orders, or if it does not so comply, be held in contempt of court for its violation of the Prior Orders.  (LA1580-LA1618).  Consistent with the Prior Orders, the proposed form of Contempt Order made clear that Rubin & Rubin, P.A., referred to therein as "Rubin & Rubin," "includes I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin, P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name."  (LA1581 at n. 1.)

Rubin & Rubin, P.A. received notice of the Contempt Motion and filed a response thereto (LA1619-LA1685), and Lender Appellees filed a reply (LA1686-LA1698).  In its response to the Contempt Motion, Rubin & Rubin, P.A. did not dispute that it had failed to comply with both of the Prior Orders.  Rather, Rubin & Rubin, P.A. argued that: (1) the relief requested in the Contempt Motion was precluded by the divestiture rule; (2) the requisite elements for contempt had not been met; and (3) Lender Appellees lacked standing.  (*Id.*)  Rubin & Rubin, P.A.'s divestiture rule argument relied on a novel assertion that the meaning of the term "Rubin & Rubin, P.A.," as used in the Prior Orders, was ambiguous.  Rubin & Rubin, P.A. further argued that the Contempt Motion sought to improperly "expand the scope of liability" under the Prior Orders "from Rubin & Rubin, P.A."—a fictitious trade name—"to I. Mark and Guy Rubin individually and to any firm or individual associated with them."  (LA1626 at ¶ 26(b)).  Appellant would later argue this was improper as "[i]t was Rubin & Rubin, P.A. that was retained [by the Debtors] and not the attorneys individually."  (LA0004-0019 ("5/25/21 Tr.") at 15:24-16:2).  Thus, Rubin & Rubin, P.A.'s divestiture argument included a separate argument that the Bankruptcy Court had not previously ruled that the words "Rubin & Rubin, P.A." encompass Mark and Guy Rubin and their respective law firms— which the Bankruptcy Court had already ruled *at Mark and Guy Rubin's request*.

On May 25, 2021, the Bankruptcy Court held a hearing on the Contempt Motion.  At the hearing, counsel admitted that Rubin & Rubin, P.A. had failed to

14

pay the funds required by the Prior Orders, but put forth no evidence as to its failure to comply. (*Id.* at 16:17-22). Rubin & Rubin, P.A. took the position that the Contempt Motion requested only an order directing Rubin & Rubin, P.A. to show cause for its noncompliance, and that a second substantive or evidentiary hearing was required. (*Id.* at 17:23-19:9). The Bankruptcy Court disagreed, stating that the Contempt Motion sought "a rule to show cause why Rubin & Rubin should not be ordered to immediately comply with those orders, and if they do not do so, to hold them in contempt of court." (*Id.* at 29:5-15).

The Bankruptcy Court rejected as "completely frivolous" Rubin & Rubin, P.A.'s argument that the Lender Appellees did not have standing to bring the Contempt Motion. (*Id.* at 31:20-23). The court also rejected any argument that its Prior Orders were ambiguous because they apply to "Rubin & Rubin, P.A.," stating: "Mark and Guy Rubin and their individual law firms operate and operated throughout this case under the fictitious trade name Rubin & Rubin, P.A." (*Id.* at 29:24-30:4). The Bankruptcy Court found that Rubin & Rubin, P.A. did not seek any clarification prior to the Contempt Motion "because they know perfectly well what the [Prior Orders] mean[]." (*Id.* at 30:20-31:1). Accordingly, the Bankruptcy Court ruled that the Prior Orders "can and will be enforced as written." (*Id.* at 31:6-18).

On May 26, 2021, the Bankruptcy Court entered the Contempt Order memorializing its ruling at the Contempt Hearing. The Contempt Order found

15

Rubin & Rubin, P.A. to be in contempt of court and ordered: (1) Rubin & Rubin,

P.A. to pay the amounts due pursuant to the Prior Orders by 4 P.M. prevailing

eastern time on June 3, 2021 ("Deadline"); and (2) should Rubin & Rubin, P.A. fail

to do so, to pay the sum of $1,000 per day to the Debtors' estates until the Contempt

Order is fully and finally satisfied. (LA0002).

Rubin & Rubin, P.A. did not comply with the Contempt Order by the

Deadline or anytime thereafter. On June 3, 2021, the Chapter 7 Trustee received a

letter from Guy Bennett Rubin of Rubin Law Associates, P.A. d/b/a Rubin & Rubin

and a check in the amount of $10,648.73—a small fraction of the Disgorged Fees—

"representing all funds that were received from Rubin & Rubin, P.A. and traceable

to fee applications approved by the Bankruptcy Court and paid by the Debtors in

connection with legal services performed by Rubin Law Associates, P.A."

(TA0052-0053). The letter purports to submit the funds to the Trustee "to be held in

trust" pending the appeals of the Prior Orders—a remedy which the Prior Orders

neither permit nor require. (LA1709-LA1710).

On June 3, 2021, Rubin & Rubin, P.A. commenced a timely appeal of the

Contempt Order. (LA1699-LA1705). On June 8, 2021, Rubin & Rubin, P.A. filed

its Stay Motion arguing that its compliance with the Contempt Order should be

stayed pending appeal on the basis of irreparable harm, including its own possible

bankruptcy. On September 27, 2021, the appeal of the Contempt Order was fully

briefed. (D.I. 25, 27, 32, 33).

### F.    The Opinion and Order Affirming the Prior Orders

Two days later, on September 29, 2021, this Court issued an Order and

accompanying Opinion affirming the Prior Orders.  *In re NNN Capitol Center 16*

*LLC, et al.*, 632 B.R. 243 (D. Del. 2021) ("Opinion").

## II.    Standard of Review

The bankruptcy court's legal conclusions are reviewed de novo, and its

factual findings are reviewed for clear error.  *In re Marvel Entm't Grp., Inc.*, 140

F.3d 463, 470 (3d Cir. 1998).  A finding is clearly erroneous if it either is

completely devoid of minimum evidentiary support displaying some hue of

credibility or bears no rational relationship to the supportive evidentiary data.

*Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223

(3d Cir. 1995).  "Where there are two permissible views of the evidence, the

factfinder's choice between them cannot be clearly erroneous."  *Anderson v. City of*

*Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

A court abuses its discretion where its decision "rests upon a clearly

erroneous finding of fact, an errant conclusion of law, or an improper application of

law to fact."  *Marvel*, 140 F.3d at 470 (internal quotation omitted).  "Under the

deferential abuse of discretion standard," a decision can only be reversed if "no

reasonable person would adopt the [bankruptcy] court's view."  *In re VistaCare*

*Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) (internal quotation omitted).

## III.   DISCUSSION

### A.   The Bankruptcy Court Had Jurisdiction to Enter the Contempt Order

The Bankruptcy Court held that the divestiture rule did not apply to the Contempt Motion because that motion merely sought to enforce the Bankruptcy Court's Prior Orders as written.  (*Id.* at 31:6-13).  The Court agrees.

"The correct statement of the Divestiture Rule is that so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it." *In re Wash. Mut. Inc.*, 461 B.R. 200, 219 (Bankr. D. Del. 2011) *vacated in part on other grounds*, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012)); *In re Campanile*, 2019 WL 968095, at *2 (Bankr. D.N.J. Feb. 25, 2019) (confirming that under the divestiture rule, "a bankruptcy court retains authority to consider a request" and to "enforce" the "appealed order" "while an appeal is pending so long as it is not altering the appealed order"); *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 679-80 (Bankr. S.D.N.Y. 2016) (confirming that the divestiture rule does not preclude a bankruptcy court from enforcing its orders but instead is only implicated when the bankruptcy court "tamper[s]" in some way with the appealed order).

### 1.   The Divestiture Rule Does Not Apply

The sole basis for Appellant's divestiture rule argument is that Footnote 1 of the Contempt Order defining "Rubin & Rubin" somehow "expanded the scope" of the Prior Orders.  (D.I. 25 at 17-28).  Both of the Prior Orders unambiguously

provide that they apply to "Rubin & Rubin."  Footnote 1 of the Contempt Order defines "Rubin & Rubin, P.A." as "I. Mark Rubin, P.A., Rubin Law Associates, P.A., Guy Bennett Rubin, P.A., I. Mark Rubin, Guy Rubin, and any other law firm or individual operating under the Rubin & Rubin, P.A. trade name."  (LA0002).

In 2019—before the Prior Orders were entered—the Bankruptcy Court accepted Mark and Guy Rubin's arguments and sworn averments that "Rubin & Rubin" encompasses both Mark and Guy Rubin and their affiliated law firms. (LA0685-LA0686).  That ruling was law of the case when the Prior Orders were entered and during the Contempt Hearing.  *See In re AmeriServe Food Distribution, Inc.,* 315 B.R. 24, 36 (Bankr. D. Del. 2004).  Indeed, in the initial Fee-Shifting Order (LA0679-LA0686), the Bankruptcy Court made clear findings as to what individuals and/or entities operated under the fictional name Rubin & Rubin, P.A.:

> Given the unusual nature of the facts in this case, the [Bankruptcy] Court is tasked with making a determination on the relationship between the attorneys and entities under the Rubin & Rubin umbrella. *After a review of the record*, the [Bankruptcy] Court has determined that *the primary attorneys operating under the umbrella are Guy Rubin and I. Mark Rubin, and their respective individually owned firms, Rubin Law Associates, P.A. and I. Mark Rubin, P.A.*

(LA0685) (emphasis added).  Thus, the footnote in Contempt Order—that "Rubin & Rubin" included Mark and Guy Rubin and the other affiliated law firms and individuals operating under the "Rubin & Rubin" tradename—does not in any way alter the meaning of either of the Prior Orders.  The Bankruptcy Court merely used a

definition that was consistent with a prior ruling it had made as to what "Rubin & Rubin" encompassed (at Mark and Guy Rubin's urging).

The record compels these findings and the scope of the Contempt Order. While Appellant *now* claims that I. Mark Rubin, P.A. is the only entity that operates under the trade name Rubin & Rubin, P.A. (D.I. 25 at 28), the pleadings and sworn declarations submitted in the bankruptcy cases tell a very different story and support the Bankruptcy Court's prior determination:

- The Retention Application listed I. Mark Rubin and Guy Rubin as principal attorneys of Rubin & Rubin, P.A. (RR010).

- Guy Rubin submitted a sworn declaration that he is of counsel to Rubin & Rubin, P.A. (RR214).

- Mark Rubin submitted a sworn declaration that he and Guy Rubin work together under the trade name Rubin & Rubin as well as under the registered trade name Rubin & Rubin, P.A. (RR204 ¶ 9).

- Mark Rubin submitted a sworn declaration that the names Rubin & Rubin, P.A. and Rubin & Rubin are fictitious names, used respectively, by I. Mark Rubin, P.A. and Rubin Law Associates, P.A., both professional associations organized under the laws of the State of Florida. (TA0003 ¶ 3).

- Mark Rubin submitted a sworn declaration that I. Mark Rubin and Guy Rubin are practicing attorneys and operate under the umbrella of Rubin & Rubin as a partnership of their respective professional associations. (TA0003 ¶ 4).

- Rubin & Rubin, P.A. filed an Application for Registration of Fictitious Name with the Florida Secretary of State, which indicated that the owners of the fictitious name are Rubin Law Associates, P.A. and I. Mark Rubin, P.A. (TA0001).

Thus, it is clear from the record that I. Mark Rubin, P.A., Rubin Law Associates, P.A. and their owners – I. Mark Rubin and Guy Rubin, respectively – are the entities and individuals behind Rubin & Rubin.

Moreover, as the Chapter 7 Trustee correctly points out (D.I. 29 at 13), these are the very individuals and entities who charged the Debtors' estates and received the payments that are subject to the Prior Orders. The record reflects that I. Mark Rubin and Guy Rubin both billed the bankruptcy estates on behalf of Rubin & Rubin, P.A. as special corporate and litigation counsel to the Debtors. (*See, e.g.*, B.D.I. 185 (first interim fee application of Rubin & Rubin, P.A.). In fact, Rubin Law Associates, P.A. received some of the money that was paid by the Debtors to Rubin & Rubin, P.A. (D.I. 25 at 30 n.7 (acknowledging that the initial wire from the Debtors went to Rubin & Rubin, P.A., but then Rubin & Rubin, P.A. issued a check to Rubin Law Associates, P.A.). Following entry of the Contempt Order, Guy Rubin of Rubin Law Associates, P.A. d/b/a Rubin & Rubin returned money to the Trustee that it received from Rubin & Rubin, P.A. (paid by the Debtors) in connection with legal services performed by Rubin Law Associates, P.A. (TA0052-0053). Because I. Mark Rubin and Guy Rubin are the sole owners and presidents of I. Mark Rubin, P.A. and Rubin Law Associates, P.A., respectively, it only follows that the money paid by the Debtors ultimately went to those individuals. (*See* TA0002 ¶¶ 1, 2; *see also* LA0685 ("The [Bankruptcy] Court concludes that the two firms operating as Rubin & Rubin are for all intents and purposes a partnership, with

21

fee sharing among its partners, I. Mark Rubin, P.A. and Rubin Law Associates, P.A."). As such, Rubin & Rubin, P.A—as well as the individuals and entities behind Rubin & Rubin, P.A.—should be required to pay the Fee-Shifting Sanction as well as the fees they previously received from the Debtors, either directly or indirectly, and that Rubin & Rubin, P.A. was ordered to disgorge under the Disqualification Order. That is precisely the relief the Contempt Order directed—relief in line with prior determinations of the Bankruptcy Court and consistent with disclosures made by Rubin & Rubin, P.A. in the bankruptcy cases. The fact that the Prior Orders did not include some kind of clarifying footnote does not change the result.

Based on the foregoing, the Court rejects Appellant's argument that Footnote 1 of the Contempt Order expanded the scope of liability set forth in the Prior Orders.

## 2. Appellant's Remaining Arguments Lack Merit

Appellant argues that it was factual error for the Bankruptcy Court to conclude that Rubin & Rubin, P.A. is a fictitious entity. (D.I. 25 at 25). As an initial matter, the Court agrees with Lender Appellees that this an incredible argument for Appellant to make given its specific and repeated representations to the Bankruptcy Court that Rubin & Rubin, P.A. is a fictitious entity comprised of separate law firms. (*See* LA0581; LA0589; LA0591; LA0599 at ¶ 9; LA0600-LA0601 at ¶ 14; LA0604 at ¶ 25; LA0609-LA0612 at ¶¶ 2, 10-12; LA0622 at 26:13-15; TA0001-0002). In addition to Mark and Guy Rubin's many sworn

averments, Appellant's counsel conceded ***during the Contempt Hearing*** that (1)
Rubin & Rubin is a fictitious name comprised of separate law firms; and (2) Guy
and Mark Rubin had advocated before the Bankruptcy Court for a finding that they
both operated jointly under the Rubin & Rubin tradename.  (LA008 at 13:11-14:4,
15:15-17).  It would not be "reversible error" for the Bankruptcy Court to adopt
Rubin & Rubin, P.A.'s stated positions.  In any event, because there was no factual
finding by the Bankruptcy Court ***in the Contempt Order*** that Rubin & Rubin, P.A.
is a fictitious entity, there can be no factual error for this Court to revisit, let alone
consider on appeal.

Appellant also asserts that the Bankruptcy Court "previously acknowledged"
that Guy Rubin's law firms, Rubin Law Associates, P.A. and Guy Bennett Rubin
P.A. are "legally distinct from I. Mark Rubin, P.A." (D.I. 25 at 28).  Appellant
appears to make this assertion to support its position that Rubin Law Associates,
P.A, and Guy Bennett Rubin P.A. are not included under the so-called "Rubin &
Rubin umbrella." (*Id.*)  Appellant's assertion is misleading.  The Bankruptcy Court
ruled that, although Mark and Guy Rubin's individual law firms (including Rubin
Law Associates, P.A. and I. Mark Rubin, P.A.) were distinct, they ***all operated***
under the Rubin & Rubin, P.A. tradename in their representation of the Debtors.
(LA0685-LA0686).

Appellant further argues that Footnote 1 in the Contempt Order "pierced the
corporate veil of all distinct legal entities operating under the 'Rubin & Rubin

umbrella' and imposed *personal* liability on all 'individual(s) *operating under* the Rubin & Rubin, P.A. trade name.'" (D.I. 25 at 23 (emphasis in original); *see also id.* at 26-29). But Footnote 1 merely made clear that which the Bankruptcy Court had already found years prior. I. Mark Rubin and Guy Rubin shared office space and co-owned the furniture, equipment and office supplies in their shared space. (RR216). They both used the website www.RubinandRubin.com and the domain name @RubinandRubin.com for their email addresses. (RR205-206). The fictitious name Rubin & Rubin, P.A. is owned by *both* Rubin Law Associates, P.A. and I. Mark Rubin, P.A., who, in turn, are solely owned by Guy Rubin and I. Mark Rubin, respectively. (TA0002-0003 ¶¶ 1-3; TA0052-0053). I. Mark Rubin and Guy Rubin admitted to working together under the trade name Rubin & Rubin, P.A. (RR204 ¶ 9; *see also* RR213 ¶ 2). Accordingly, there was a complete lack of corporate separateness. As such, this is not a situation where the court *sua sponte* pierced the corporate veil to disregard the existence of a corporation to make the individual principals liable for the debts of the corporation. *See Trustees of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003). Rather, Rubin & Rubin, P.A. and I. Mark Rubin and Guy Rubin are essentially one and the same. (*See, e.g.*, D.I. 25 at 25 (referencing deposition testimony of I. Mark Rubin where he stated that Rubin & Rubin, P.A. "does not exist as a separate entity but is merely a trade name")).

Appellant asserts that the Bankruptcy Court "through judicial fiat, pierced the corporate veil" of the firms operating under the Rubin & Rubin, P.A. trade name. But as stated above, the Prior Orders always applied to the individuals and law firms that chose to and did operate in the bankruptcy proceedings under the Rubin & Rubin, P.A. trade name, and this argument is nothing more than an attempt to relitigate the Prior Orders, which is not proper during a contempt proceeding—much less in an appeal of a contempt proceeding. *See Harris v. City of Phila.*, 47 F.3d 1333, 1337 (3d Cir. 1995) (the validity of an underlying order is "not open to collateral attack in a contempt proceeding for violating it"). Moreover, Rubin & Rubin, P.A. is a trade name, not a corporate entity. Accordingly, there was no "corporate veil" to be pierced. (*Id.*)

Appellant insists that the inclusion of "any other law firm or individual ***operating under*** the Rubin & Rubin, P.A. trade name" in Footnote 1 of the Contempt Order "impermissibly expanded the scope of liability over entities and individuals that have not appeared before [the Bankruptcy Court], that never rendered services to the Debtors, never participated in any of the acts and omissions forming the basis for the sanctions, and over which [the Bankruptcy Court] has no jurisdiction." (D.I. 25 at 29) (emphasis added). Reading "operating under" as broadly as possible, Appellant apparently believes this language effectively imposes joint and several liability on all counsel, associates, paralegals

25

and secretaries of the respective firms. (*Id.*)  That is not the case.  The language

says "operating under"—not employed by or associated with.  Given the shell game

played by Rubin & Rubin, P.A. throughout the bankruptcy cases, this catch-all

language was intended to capture any other individuals or entities (in addition to I.

Mark Rubin, P.A., Rubin Law Associates, P.A., I. Mark Rubin and Guy Rubin) that

may have received funds from the Debtors (either directly or indirectly through

Rubin & Rubin, P.A.) in connection with legal services provided to the Debtors.

Finally, Appellant continues to argue that only Rubin & Rubin, P.A. received

funds from the Debtors.  (D.I. 25 at 3, 29 n.6, 30).  While Rubin & Rubin, P.A. may

be the only "entity" that received funds ***directly*** from the Debtors, we know from I.

Mark Rubin's sworn testimony that it is a ***fictitious*** entity.  Thus, Appellant's

argument does not paint the entire picture.  And making clear that disgorgement

applies to all falling under the Rubin & Rubin, P.A. umbrella is consistent with the

statutory remedies available to the Chapter 7 Trustee under Chapter 5 of the

Bankruptcy Code to recover property of the estate.  *See* 11 U.S.C. § 542 (setting

forth affirmative obligation to turnover property of the estate), § 550 (setting forth

remedy to recover property of the estate).

### B.    The Contempt Order Did Not Violate Due Process

Section 105 of the Bankruptcy Code gives bankruptcy courts authority to find

parties in civil contempt.  *See In re Vaso Active Pharmaceuticals, Inc.*, 514 B.R.

416, 421 (Bankr. D. Del. 2014); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 331

(Bankr. D. Del. 1999) *aff'd sub nom. In re Cont'l Airlines,* 2000 WL 1425751 (D. Del. Sept. 12, 2000) *aff'd sub nom. In re Cont'l Airlines, Inc.,* 279 F.3d 226 (3d Cir. 2002). To establish that a party is liable for civil contempt, a plaintiff must establish three elements by clear and convincing evidence: (i) a valid order of the court existed, (ii) the defendant had knowledge of the order, and (iii) the defendant disobeyed the order. *Vaso Active Pharmaceuticals, Inc.,* 51 B.R. at 422. All of the elements were met, and Appellant does not allege otherwise.[5] Rather, Appellant asserts it was not afforded an opportunity to present defenses to its non-compliance with the Prior Orders. (D.I. 25 at 31). This argument is belied by the record.

The record reflects that counsel for Rubin & Rubin, P.A. received adequate notice of the Contempt Motion by CM/ECF notification, electronic mail, and first class mail. Appellant had an opportunity to respond and filed a written objection with the Bankruptcy Court. In addition, counsel for Rubin & Rubin, P.A. appeared at the hearing on the Contempt Motion. Thus, Appellant had multiple opportunities to present evidence and defenses in support of its noncompliance, but chose not to do so. Instead, Appellant twice made a deliberate and strategic choice to address

---

[5] Appellant also argued below that the Prior Orders were somehow ambiguous. Because Appellant abandoned that argument on appeal, it is waived. *See Prometheus Radio Project v. Fed. Commc'ns Comm'n,* 824 F.3d 33, 53 (3d Cir. 2016) (an argument not raised in an appellant's opening brief is waived). In any event, the Sanctions Orders were clear and unambiguous for all the reasons set forth above.

only why no order to show cause should issue—once in its written response and again at the hearing. (*See* D.I. 25 at 32).

Appellant seeks to shift blame to the Lender Appellees and the Bankruptcy Court. (D.I. 25 at 32-35). While Lender Appellees were required to submit a proposed form of order with the Contempt Motion, the Bankruptcy Court was not hamstrung to the relief sought in the proposed form of order, and the court routinely enters orders different from the proposed orders submitted with motions. Even so, the Contempt Motion stated that Rubin & Rubin, P.A. "should be required to comply immediately with [the Prior Orders] or be held in contempt," which is exactly the relief the Bankruptcy Court fashioned.

Appellant cites no Third Circuit authority ***requiring*** a two-step process for a rule to show cause. (*See* D.I. 25 at 33-34). Indeed, the Bankruptcy Court routinely enters contempt orders in connection with motions for a rule to show cause. *See, e.g., In re Vaso Active Pharmaceuticals, Inc.*, 514 B.R. at 418 (entering an order finding defendant in contempt for violating prior court order after plaintiff filed motion for a rule to show cause); *see also U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 690-91 (7th Cir. 2010) ("In certain limited circumstances, a district court may treat a show-cause motion as a motion for an order on the merits of the alleged contempt where doing so would not cause prejudice—that is, when it would not violate the alleged contemner's right to notice and an opportunity to be heard.") (citing 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1195 (3d ed. 2004) ("[A]

request for a show cause order usually will be entertained and treated as a motion, *if doing so will not prejudice the opposing parties*." (emphasis added)).  While some courts have employed a two-step process, it is not always required.  (*See* D.I. 25 at 33-34 (citing non-binding case from Middle District of Pennsylvania where court "may" exercise its contempt power after a two-step process).  In any event, a two-step process was unnecessary here.

Appellant asserts that the first step should have been a hearing on whether Rubin & Rubin, P.A. complied with the Prior Orders.  (D.I. 25 at 34).  But it is undisputed that it did not.  Even counsel for Rubin & Rubin, P.A. has admitted its noncompliance.  (*See* 5/25/21 Tr. at 16:17-22).  Thus, the supposed first step in the two-step process was unnecessary.

The second step, according to Appellant, should then have been a contempt hearing at which Rubin & Rubin, P.A. could have presented defenses regarding its inability to comply with the Prior Orders.  (D.I. 25 at 35).  But when questioned by the Court, Appellant's counsel could not cite a single defense Rubin & Rubin, P.A. *intended* to raise—including inability to pay—nor explain what issue would require a second, evidentiary hearing.  (*See* 5/25/21 Tr. at 26:2-10 (counsel to Appellant stating that there are various defenses to a rule to show cause, including "inability to pay," but "I'm not saying we're going to raise those defenses because I haven't discussed those with my client ...").  So the supposed second step in the two-step process may have proved unnecessary as well.  In light of the Bankruptcy Court's

rejection of Appellant's arguments that Lender Appellees lacked standing, that the
Prior Orders were somehow ambiguous, and that the proposed Contempt Order
exceeded the scope of the Prior Orders, and, given that Appellant's counsel could
propose no other defense that required a subsequent evidentiary hearing, the Court
finds no abuse of discretion in the entry of the Contempt Order.

While a complete financial inability to comply with an order may be a
defense to a charge of civil contempt, Rubin & Rubin, P.A. bears the burden of
producing evidence of its inability to comply with the Prior Orders. *Egnotovich v.
Greenfield Twp. Sewer Auth.*, 378 F. App'x 121, 123-24 (3d Cir. 2010). Appellant
suggested no such evidence in either its written response or at the May 25, 2021
hearing. Moreover, the only "evidence" offered by Appellant to date (albeit,
belatedly) is a four paragraph, conclusory declaration that it is "incapable of
complying with [the Contempt Order]." (TA0130-0131). Even if Appellant had the
foresight to present this defense in connection with the Contempt Motion, it would
have fallen far short of its burden. *See Marks L. Offs., LLC v. Mireskandari*, 704 F.
App'x 171, 178 (3d Cir. 2017) (noting that a "mere assertion of inability" does not
suffice to support a defense to contempt). Appellant's claims of lack of due process
ring hollow.

## C.    The Stay Motion Is Denied As Moot

On June 8, 2021, Appellant filed the Stay Motion, arguing that its compliance
with the Contempt Order should be stayed pending its appeal on the basis of

irreparable harm: "Absent a stay pending appeal, Rubin [& Rubin], and all individuals and entities operating under its umbrella, will be faced with a harsh $1,000 per diem fine for non-compliance with the Order and, potentially, bankruptcy." (*See* D.I. 4 at 7). The Stay Motion was not filed as an emergency motion, did not request expedited consideration, was inadvertently overlooked, and came to the Court's attention again only in the course of deciding this appeal. (*See id.*) Regardless of the merits of that motion, Appellant promptly sought relief following entry of the Contempt Order by filing the Stay Motion, and it should not bear the consequences of the Court's delay in considering the relief requested. Accordingly, while the Contempt Order will be affirmed, and the Stay Motion will be denied as moot, the Court holds that Rubin & Rubin, P.A. will not be responsible for the Contempt Order's $1,000 per day sanction solely with respect to that portion of the sanction that otherwise would be attributable to the period between June 8, 2021—the filing date of the Stay Motion—through the date of entry of the Order accompanying this Opinion.

## IV.   CONCLUSION

For the reasons discussed above, the Court will affirm the Contempt Order in part and deny the Stay Motion as moot.   The Court will issue an Order consistent with this Opinion.